[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**JUNE 10, 2003**
**THOMAS  K. KAHN**
**CLERK**

No. 02-14474

_____

D.C. Docket No. 02-00029-CR-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTONIO MADERA-MADERA,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Georgia

_____

**(June 10, 2003)**

Before BIRCH and HULL, Circuit Judges, and EDENFIELD*, District Judge.

HULL, Circuit Judge:

After pleading guilty, Antonio Madera-Madera, an illegal alien, was

_____
*Honorable B. Avant Edenfield, United States District Judge for the Southern District of
Georgia, sitting by designation.

sentenced to 60 months' imprisonment for unlawful reentry into the United States after deportation, in violation of 8 U.S.C. §§ 1326(a)(2) and 1326(b)(2). The sole issue on appeal is whether the district court properly concluded that Madera's prior felony drug conviction under Georgia law constitutes a "drug trafficking offense" under § 2L1.2(b)(1)(A)(i) of the Sentencing Guidelines. After review, we affirm.

## I. BACKGROUND

In Gwinnett County, Georgia, Madera was indicted for possession of 400 grams of methamphetamine. Under Georgia law, any person who "has possession of 28 grams or more of methamphetamine . . . commits the felony offense of trafficking in methamphetamine. O.C.G.A. § 16-13-31(e). In April 1999, Madera pled guilty to possession of 87 grams of methamphetamine in violation of O.C.G.A. § 16-13-31(e). The Georgia trial court then sentenced Madera to "a sentence of 20 years, of which 10 years shall be served in confinement, the balance of sentence shall be served on probation." However, Madera was released and removed to Mexico on May 26, 2001.

In less than two months after his removal, Madera illegally reentered the United States. On March 23, 2002, Madera was detained by INS agents, and admitted his illegal reentry.

2

On May 9, 2002, Madera pled guilty to the federal offense of being a previously-deported alien found unlawfully in the United States, in violation of 8 U.S.C. §§ 1326(a)(2) and 1326(b)(2). At sentencing, the district court enhanced Madera's offense level by 16 levels due to the fact that Madera's prior felony drug conviction constituted a "drug trafficking offense" under § 2L1.2(b)(1)(A)(i) of the Sentencing Guidelines. Although Madera did not contest his guilt, he objected to the 16-level enhancement and timely appealed his 60-month sentence.

## II. DISCUSSION

The United State Code increases the authorized maximum penalty to 20 years' imprisonment if the illegally reentering alien's prior deportation followed "an aggravated felony" conviction. See 8 U.S.C. § 1326(b)(2). For this illegal reentry offense, § 2L1.2(a) of the Sentencing Guidelines provides for a base offense level of 8. Section 2L1.2(b), entitled "Specific Offense Characteristics," provides for enhancements ranging from 4 to 16 levels. Specifically, the enhancements increase based on the serious nature of the prior conviction as follows:

> (1) Apply the Greatest:
> If the defendant previously was deported, or unlawfully remained in the United States, after--
> (A) <u>a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months</u>; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v)

3

a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense committed for profit, <u>increase by 16 levels;</u>
(B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels;
(C) a conviction for an aggravated felony, increase by 8 levels;
(D) a conviction for any other felony, increase by 4 levels . . .

U.S.S.G. § 2L1.2 (emphasis added). A 16-level enhancement under

§ 2L1.2(b)(1)(A)(i) is warranted if Madera's Georgia felony conviction constitutes

a "drug trafficking offense."[1]

Therefore, we review the nature of Madera's drug trafficking conviction

under Georgia law, as well as under the relevant Application Notes to, and history

of, § 2L1.2(b)(1)(A)(i) of the Sentencing Guidelines.

## A.  Georgia's Drug Trafficking Offense

Georgia Code § 16-13-31(e) provides several means by which a defendant

can be deemed guilty of drug trafficking in methamphetamine. Section 16-13-

31(e) states: "[a]ny person who knowingly sells, manufactures, delivers, or brings

into this state <u>or has possession of 28 grams or more of methamphetamine</u> . . .

commits the felony offense of trafficking in methamphetamine." O.C.G.A. § 16-

13-31(e) (emphasis added). Therefore, under § 16-13-31(e), Madera could be

---

[1]Given that Madera was sentenced to 20 years with 10 years to be served in confinement, there is no dispute that his Georgia sentence exceeded 13 months.

found guilty of drug trafficking by possessing 28 grams or more of methamphetamine. Indeed, Madera actually pled guilty to possession of 87 grams of methamphetamine, clearly a drug trafficking offense under Georgia law.

Although Georgia law expressly designates Madera's offense as drug "trafficking," Madera argues that his prior drug offense should not be considered a trafficking offense under the Guidelines because he only possessed the drugs.[2] We disagree for several reasons.

First, this argument ignores the amount of drugs Madera possessed and why Georgia considers that conduct drug "trafficking." In discussing Georgia's drug statutes, the Georgia Supreme Court has explained that the Georgia legislature has enacted a three-tiered scheme for punishing those persons involved with drugs. See Bassett v. Lemacks, 258 Ga. 367 (1988). According to the Georgia Supreme Court, the three tiers are: (1) possession of any amount of a controlled substance under O.C.G.A. § 16-13-30(a); (2) manufacture, delivery, distribution, dispensing, administering, selling, or possession with intent to distribute any amount of a controlled substance under O.C.G.A. § 16-13-30(b); and (3) "trafficking" by possessing more than a designated amount of a controlled substance under

---

[2]Federal law, not state law, controls the application of the Sentencing Guidelines. United States v. Tamayo, 80 F.3d 1514, 1523 (11th Cir. 1996). Furthermore, this Court reviews a district court's application of the Sentencing Guidelines de novo. United States v. Hunerlach, 258 F.3d 1282, 1285 (11th Cir. 2001).

5

O.C.G.A. § 16-13-31, which "aims at <u>a yet more serious offense</u>."  <u>Bassett</u>, 258 Ga. at 370 (emphasis added).  In § 16-13-31, Georgia considers possession of the following amounts of narcotics "trafficking:" 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine, <u>see</u> O.C.G.A. § 16-13-31(a); four grams or more of morphine or opium or any salt, isomer, or salt of an isomer thereof, including heroin, <u>see</u> O.C.G.A. § 16-13-31(b); 50 pounds or more of marijuana, <u>see</u> O.C.G.A. § 16-13-31(c); 200 grams or more of methaqualone or any mixture containing methaqualone, <u>see</u> O.C.G.A. § 16-13-31(d); or 28 grams or more of methamphetamine, amphetamine, or any mixture containing either methamphetamine or amphetamine, <u>see</u> O.C.G.A. § 16-13-31(e).

Accordingly, it must be possession of a <u>significant</u> quantity of drugs before Georgia deems the offense drug "trafficking."  Therefore, under Georgia's three-tiered scheme, drug trafficking, the offense to which Madera pled guilty, is a more serious offense than either simple possession or possession with intent to distribute.  <u>Id.</u>; <u>see also</u> <u>Nunery v. State</u>, 229 Ga. App. 246, 247 (1997) (stating criminal charges for selling methamphetamine under § 16-13-30(b) are lesser included offenses of charges of trafficking in methamphetamine under § 16-13-31).

Second, by selecting 28 grams as the dividing line between possession/

6

possession with intent to distribute versus trafficking, the three-tiered Georgia drug classification system recognizes that someone who is in possession of 87 grams of methamphetamine, as was Madera, plans on distributing and thereby "trafficking" those drugs. In making possession of 28 grams of methamphetamine a "trafficking" offense, Georgia's trafficking statute necessarily infers an intent to distribute once a defendant possesses a certain amount of drugs.

As further explained by the Georgia Supreme Court, there are a number of ways the Georgia legislature could have defined drug trafficking. Bassett, 258 Ga. at 370. The Georgia legislature could have defined trafficking by the number of drug transactions an individual engaged in or the amount of money involved in a particular drug transaction. Id. The Georgia legislature elected, however, to use the amount of the controlled substance "as the basis for distinguishing the crime of trafficking from the somewhat less serious crimes" of mere possession and possession with intent to distribute. Id. The elevated drug quantities in Georgia's drug laws represent an intent to distribute and thereby traffic.

Third, the sentencing structure in Georgia's three-tier system also reflects that Georgia treats the conduct of possessing 28 grams or more of methamphetamine as evidence of an intent to distribute and thereby traffic, and as a more serious offense under Georgia law than either simple possession or

possession with intent to distribute. For simple possession, an individual faces a mandatory minimum term of imprisonment of 2 years, and up to 15 years' imprisonment. O.C.G.A. § 16-13-30(c). For possession with intent to distribute, an individual faces a mandatory minimum term of imprisonment of 5 years, and up to 30 years' imprisonment. O.C.G.A. § 16-13-30(d). An individual like Madera, however, who violates § 16-13-31(e) by possessing between 28 and 200 grams of methamphetamine, and is thus guilty of drug trafficking, "shall be sentenced to mandatory minimum term of imprisonment of ten years and shall pay a fine of $200,000.00." O.C.G.A. § 16-13-31(e)(1).[3]

## B.    Application Notes to § 2L1.2

Madera also argues that his Georgia offense does not qualify for the 16-level enhancement due to the Application Notes to § 2L1.2. The Application Notes define "drug trafficking offense" for the purposes of § 2L1.2(b)(1)(A)(i) as meaning "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance

---

[3]As mentioned above the Georgia trial court sentenced Madera to a term of 10 years' imprisonment and "impose[d] the statutory fine for this serious drug offense, which is the amount of $200,000." Although defense counsel on appeal originally claimed that Madera's conviction was for simple possession under O.C.G.A. § 16-13-30(a), the record reveals that Madera's conviction was actually for drug trafficking under O.C.G.A. § 16-13-31(e). In addition, both parties necessarily agreed at oral argument that Madera's conviction was under O.C.G.A. § 16-13-31(e). Thus, the principal question in this case is whether a conviction under O.C.G.A. § 16-13-31(e) qualifies for the 16-level enhancement under § 2L1.2(b)(1)(A)(i) of the Sentencing Guidelines.

(or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2, Application Note 1(B)(iii) (emphasis added). Based on this Application Note, Madera argues that in order for his Georgia conviction to trigger the 16-level enhancement, the Application Note requires both the statutory element of possession and the statutory element of intent to distribute be actually present in the language of Georgia's trafficking statute. According to Madera, the fact that the Georgia statute requires only the element of possession (albeit of 28 grams), the 16-level enhancement is inapplicable. We do not agree with Madera's interpretation of the Application Note to § 2L1.2 for several reasons.

First, the Sentencing Commission clearly understands how to define an enhancement in terms of the elements of the prior offense, but did not do so in § 2L1.2(b)(1)(A)(i). For example, under § 2L1.2(b)(1)(A)(ii), a different subsection of the same guideline at issue in this case, the Commission elected to define a "crime of violence" by the elements of the prior offense. See Application Note 1(B)(ii)(I) - (II) (defining "crime of violence" as meaning "an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and includes

9

murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling" (emphasis added)).[4]

The Commission did not, however, define a "drug trafficking offense" by its elements. Rather, the Commission defined drug trafficking by the type of conduct prohibited by the state statute. Therefore, the question is not whether the wording of the Georgia statute exactly matches the Application Note to the Guideline, but rather whether the federal definition of drug trafficking in the Guidelines is satisfied by Georgia's drug trafficking offense which punishes possession of a significant, designated quantity of drugs. We conclude that it is because Georgia's three-tiered scheme treats an elevated amount of drugs as equivalent to an intent to distribute and thereby traffic. See Bassett, 258 Ga. at 370; O.C.G.A. § 16-13-30; O.C.G.A. § 16-13-31.

Here, Madera pled guilty to possession of 87 grams of methamphetamine, a drug trafficking offense. As stated above, Georgia's three-tiered drug scheme recognizes that someone who is in possession of 87 grams of methamphetamine

---

[4]In United States v. Fuentes-Rivera, 323 F.3d 869, 871 (11th Cir. 2003), this Court noted that Application Note 1(B)(ii)(I) - (II) of § 2L1.2 of the Sentencing Guidelines defined the crime of violence as including the physical force element and certain listed offenses. Despite the "and" in this Application Note, this Court joined other circuits in concluding that being a listed offense alone was sufficient to qualify as a crime of violence. Id. at 872.

plans on distributing and thereby "trafficking" those drugs. Id. Similarly, federal law likewise permits an inference of intent to distribute from a defendant's possession of a significantly large quantity of drugs. See United States v. Bain, 736 F.2d 1480, 1486 (11th Cir. 1984). Thus, Madera's drug offense falls within the Application Note's definition of a drug trafficking offense.

Second, Madera was convicted of the most serious drug offense in Georgia. To hold that the 16-level enhancement is not appropriate in his case would create an anomaly; someone in Georgia convicted of a lesser offense (possession with intent to distribute any amount of a controlled substance) would receive a 16-level enhancement upon illegal reentry, but Madera would not even though he was convicted of the more serious trafficking offense under Georgia law.

Third, such an anomalous result is directly contrary to what the Commission intended when it revised the Guidelines in 2001. The prior version of § 2L1.2 mandated the 16-level enhancement if the prior conviction was for any "aggravated felony," a term defined in another section of the immigration laws, 8 U.S.C. § 1101(a)(43). The 2001 amendment responded to concerns that this term included too many offenses by enacting a sliding scale of enhancements "depending on the seriousness of the prior aggravated felony and the dangerousness of the defendant." See U.S.S.G. App. C., amend. 632; see also

United States v. Rodriguez-Arreola, 313 F.3d 1064, 1065-66 (8th Cir. 2002);

United States v. Caicedo-Cuero, 312 F.3d 697, 711 (5th Cir. 2002).

The Commission explained as follows:

> This amendment responds to concerns raised by a number of judges, probation officers, and defense attorneys . . . that § 2L1.2 . . . sometimes results in disproportionate penalties because of the 16-level enhancement provided in the guideline for a prior conviction for an aggravated felony. The disproportionate penalties result because the breadth of the definition of "aggravated felony" provided in 8 U.S.C. § 1101(a)(43), which is incorporated into the guideline by reference, means that a defendant who previously was convicted of murder, for example, receives the same 16-level enhancement as a defendant previously convicted of simple assault. . . . This amendment responds to these concerns by providing a more graduated sentencing enhancement of between 8 levels and 16 levels, <u>depending on the seriousness of the prior aggravated felony</u>.

U.S.S.G. app. C, comment. to amend. 632 (2001) (emphasis added). Therefore, the purpose of the 2001 amendment was to ensure that those illegal alien defendants with <u>more severe</u> prior offenses received <u>more severe</u> sentences. Thus, our conclusion is consistent with the intent of the 2001 amendments. See United States v. Fuentes-Rivera, 323 F.3d 869, 872 (11th Cir. 2003) (stating that "it is necessary to give meaning to all its words so that no words shall be discarded as being meaningless, redundant, or mere surplusage").

### III. CONCLUSION

For all the above reasons, we affirm Madera's 60-month sentence.

**AFFIRMED**