[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 08, 2005
THOMAS K. KAHN
CLERK

No. 04-12119
Non-Argument Calendar
_____

D. C. Docket No. 03-60278-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PATRICK JOSEPH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 8, 2005)**

Before ANDERSON, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Patrick Joseph appeals his conviction and 360-month sentence for attempted

possession with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846.  Joseph raises four issues on appeal.  We address each in turn.

## I.

Joseph first argues that the district court reporter's failure to transcribe certain audio and video evidence introduced at trial warrants a new trial.  See 28 U.S.C. § 753(b) ("Each session of the court . . . shall be recorded verbatim . . . .").  Joseph is represented by new counsel in this appeal, and a new trial is warranted only if "there is a substantial and significant omission from the trial transcript." United States v. Charles, 313 F.3d 1278, 1283 (11th Cir. 2002).  Joseph has not met that standard.

As the testimony from the trial demonstrates, Joseph was not a speaker in the audiotape that he contends should have been transcribed.  Nor was he even mentioned in the audiotaped conversation.  He has provided no plausible suggestion as to how the failure to transcribe the audio evidence led to a substantial and significant omission from the trial transcript as it relates to him.

The videotape evidence that Joseph asserts should have been transcribed consists of surveillance footage from restaurants surrounding the area where the staged drug deal was set to take place.  That footage established only that Joseph

2

was present at the scene where the staged drug deal was to take place. The government put forth several witnesses attesting to Joseph's presence at the scene of the drug deal. The videotape evidence was duplicative of other evidence and, at best, merely corroborated the testimony presented by the government.

The failure to transcribe the audio and video evidence presented at trial did not result in "a substantial and significant omission from the trial transcript." Id. As a result, a new trial is not warranted.

## II.

Next, Joseph argues that the district court erred by admitting codefendant/government witness Sherman Higgs' testimony regarding his past drug deals with Joseph. We review the district court's evidentiary decisions only for abuse of discretion. United States v. Chavez, 204 F.3d 1305, 1316 (11th Cir. 2000).

Fed. R. Evid. 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." The test for the admissibility of extrinsic evidence under Rule 404(b) has three parts:

> First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, the evidence must be sufficient to support a finding that the defendant actually committed the extrinsic act. Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice.

United States v. Calderon, 127 F.3d 1314, 1330 (11th Cir. 1997)

Higgs testified about his and Joseph's roles in the cocaine deal for which they were arrested. Higgs was also permitted to testify about previous cocaine deals in which he and Joseph had been involved. Higgs testified that he contacted Joseph for the drug deal at issue here because he was involved in two previous cocaine deals with Joseph in 2003, one involving two kilograms of cocaine and the other five kilograms. Higgs also testified that he had purchased cocaine from Joseph in smaller amounts—approximately an ounce—in the mid-1990s.

As for relevance, Higgs' testimony about their prior drug dealings gave the jury an understanding of the relationship between Higgs and Joseph. It gave the jury an explanation as to why Higgs went to Joseph for the present cocaine deal. See United States v. Williams, 205 F.3d 23, 33–34 (2d Cir. 2000). It was also relevant to establish Joseph's intent regarding the current cocaine deal. See Calderon, 127 F.3d at 1331. As for sufficiency, Higgs' testimony is enough to

4

support a finding that Joseph committed the prior cocaine deals.[1]  Furthermore, the probative value of Higgs' testimony was not substantially outweighed by undue prejudice, especially in light of the district court's limiting instruction to the jury.[2] See United States v. Richardson, 764 F.2d 1514, 1522 (11th Cir. 1985).

The district court did not abuse its discretion in allowing Higgs to testify about his prior cocaine deals with Joseph.

### III.

Joseph's third contention is that the evidence is insufficient to support his conviction for attempted possession with intent to distribute at least 500 grams of cocaine.

"We review de novo the sufficiency of the evidence to support a conviction. In doing so, we look at the record in the light most favorable to the verdict and draw all reasonable inferences and resolve all questions of credibility in favor of

---

[1] Joseph asserts that he could not have been involved in the drug deals that Higgs testified occurred in the mid-1990s because he was in jail at that time.  The PSI states that Joseph was arrested in late 1990 and was released from prison in 1994 and deported to Haiti.  However, in 1997 Joseph was found in Florida.  He was arrested and convicted of illegally entering the United States after deportation.  Joseph has introduced no evidence to suggest that the "mid-1990s" cocaine deals that Higgs testified about could not have occurred at some point between the time that Joseph illegally entered the United States after his 1994 deportation and his arrest in 1997.

[2] We agree with the district court that the mid-1990s cocaine transactions that Higgs testified about were not too remote in time to be probative.  See, e.g., United States v. Lampley, 68 F.3d 1296, 1300 (11th Cir. 1995) (fifteen-year-old drug transactions were not too remote in time to have probative value).

the government.  The evidence is sufficient where a reasonable trier of fact could conclude that the evidence established guilt beyond a reasonable doubt." United States v. Marte, 356 F.3d 1336, 1344–45 (11th Cir. 2004) (citations omitted).

"To sustain a conviction for attempted possession with intent to distribute cocaine, the government must prove beyond a reasonable doubt that the defendant[] (1) acted with the kind of culpability required to possess cocaine knowingly and wilfully and with the intent to distribute it; and (2) engaged in conduct which constitutes a substantial step toward the commission of the crime under circumstances strongly corroborative of [his] criminal intent." United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001).

As for culpability, Higgs testified that Joseph had agreed to purchase four kilograms of cocaine.  He further testified that Joseph had provided the money for the drug deal.  In addition, Joseph drove his car to the restaurant where the cocaine purchase was set to take place.[3]  The trunk of his car contained a shoe box full of money.  Taken together the evidence is sufficient to demonstrate that Joseph, with requisite state of mind, sought to possess the cocaine.  The quantity of cocaine involved in the deal, along with Higgs' testimony regarding his prior small

---

[3] "Although mere presence is inadequate to establish guilt, we have held that it is material, highly probative, and not to be discounted." United States v. Gamboa, 166 F.3d 1327, 1332 (11th Cir. 1999).

purchases of cocaine from Joseph, is sufficient evidence that Joseph was attempting to purchase this cocaine with the intent to distribute it.  Cf. United States v. Madera-Madera, 333 F.3d 1228, 1233 (11th Cir. 2003) ("federal law . . . permits an inference of intent to distribute from a defendant's possession of a significantly large quantity of drugs").

Turning to the substantial step requirement, as we already noted, the evidence demonstrated that Joseph drove his car, which contained a shoe box full of cash in the trunk, to the restaurant where the cocaine purchase was to take place. Higgs testified that after arriving at the restaurant Joseph retrieved the cash from the trunk of the car and handed it to him in order to consummate the cocaine deal.

Viewed in the light most favorable to the government, the evidence is sufficient to sustain Joseph's conviction for attempted possession with intent to distribute cocaine.

**IV.**

Finally, Joseph argues that the district court violated his Sixth Amendment rights under Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004) and United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005), by finding he was a career offender under the sentencing guidelines based on facts that were neither found by a jury nor admitted by him.

Because Joseph failed to raise this issue before the district court, we review only for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). A defendant meets his burden under plain error if "there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation and citation omitted).

As we have previously recognized, "[i]n Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998), the Supreme Court held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence. This conclusion was left undisturbed by Apprendi, Blakely, and Booker." United States v. Shelton, 400 F.3d 1325, 1329 (11th Cir. 2005) (quotation and citation omitted). As a result, the district court did not commit a Booker constitutional error by finding that Joseph qualified as a career offender.

Nevertheless, "it was Booker [statutory] error for the district court to sentence [the defendant] under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment enhancement violation." Id. at 1330–31. As a

8

result, Joseph has met his burden as to the first two prongs of the plain error test. See id.

As for the third prong, Joseph has the burden of showing that "there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Rodriguez, 398 F.3d at 1301. Joseph has not pointed to anything in the record to suggest that the district court would have given him a lower sentence had it applied the guidelines in an advisory instead of binding fashion. As a result, Joseph has not demonstrated that his substantial rights were affected by the Booker statutory error.

## V.

Based on the foregoing, Joseph's conviction and sentence are AFFIRMED.