[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13691
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00504-SDM-AAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SADONNIE MARQUIS KITCHEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 14, 2017)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Sadonnie Kitchen appeals his conviction and 60-month sentence for

possession of a firearm by a convicted felon.  On appeal, he argues that: (1) he

should not have received an increased base offense level based on his prior conviction under Florida's drug-trafficking statute; and (2) his conviction under 18 U.S.C. § 922(g) is void, because the statute is unconstitutional facially and as applied. After careful review, we affirm.

When reviewing a district court's findings with respect to guidelines issues, we consider legal issues de novo, factual findings for clear error, and the court's application of the Sentencing Guidelines to the facts with due deference, which is akin to clear error review. United States v. Rothenberg, 610 F.3d 621, 624 (11th Cir. 2010). We review the constitutionality of statutes de novo. United States v. Scott, 263 F.3d 1270, 1271 (11th Cir. 2001). To preserve an issue for appeal, a party must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought. United States v. Straub, 508 F.3d 1003, 1011 (11th Cir. 2007).

We review issues raised for the first time on appeal only for plain error, but have said that allowing a conviction to stand under a statute which Congress was without power to enact is plain error. United States v. Williams, 121 F.3d 615, 618 (11th Cir. 1997). To establish plain error, a defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. United States v. Turner, 474 F.3d 1265, 1275-76 (11th Cir. 2007). If these three conditions are satisfied,

2

we may exercise our discretion to recognize the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. at 1276.

It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party. United States v. Baker, 432 F.3d 1189, 1216 (11th Cir. 2005), abrogated on other grounds, Davis v. Washington, 547 U.S. 813, 821 (2006). The doctrine of invited error is implicated when a party induces or invites the district court into making an error. Id. Where invited error exists, a court cannot invoke the plain error rule and reverse. Id.

First, we are unpersuaded by Kitchen's claim that the district court erred by increasing his base offense level based on his prior conviction under Florida's drug-trafficking statute. The Sentencing Guidelines provide for a base offense level of 20 for unlawful possession of a firearm if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). The term "controlled substance offense" means "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." Id. § 4B1.2(b). A sentencing court should look at the elements of the

3

convicted offense and not the conduct underlying the conviction in determining if a prior conviction is a controlled substance offense under § 4B1.2. United States v. Lipsey, 40 F.3d 1200, 1201 (11th Cir. 1994).

We've held that a Georgia drug-trafficking statute that, in part, prohibited the possession of a certain amount of drugs, without explicitly requiring a showing of intent, was a "drug trafficking offense" under a guidelines provision worded identically to § 4B1.2(b). United States v. Madera-Madera, 333 F.3d 1228, 1232-34 (11th Cir. 2003). In Madera-Madera, we explained that "Georgia's trafficking statute necessarily infers an intent to distribute once a defendant possesses a certain amount of drugs," and that Georgia law recognized that someone in possession of a particular amount of drugs "plans on distributing and thereby 'trafficking' those drugs." Id. at 1232-33. Thus, we concluded that failing to recognize drug trafficking as a controlled substance offense would produce an anomalous result under Georgia's three-tiered scheme for drug crimes, because a defendant convicted for drug trafficking would not receive an enhanced sentence while a defendant convicted for the lesser offense of possession with intent to distribute any amount of drugs would. Id. at 1233-34.

At the time of Kitchen's conviction, Florida's drug-trafficking statute provided felony penalties for any person "who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or

4

constructive possession of" between 4 grams and 30 kilograms of hydrocodone. Fla. Stat. § 893.135(1)(c)1a (2010). We've previously addressed whether Florida's drug-trafficking statute qualified as a "serious drug offense" under the ACCA. United States v. James, 430 F.3d 1150, 1154-55 (11th Cir. 2005), overruled on other grounds by Johnson v. United States, 550 U.S. 192 (2007). In James, we noted that Florida has a three-tiered scheme for drug crimes similar to Georgia's, and held that, like the Georgia drug-trafficking statute in Madera-Madera, the Florida statute inferred intent to distribute from the quantity of drugs. Id. We determined that it was not necessary for the statute to include intent as an element under the ACCA's definition of a "serious drug offense," which included any offense "involving" intent to distribute. Id. at 1155. The word "involving," we explained, meant that serious drug offenses could include offenses that did not have intent as an element. Id. We also said that, as in Madera-Madera, holding that a drug-trafficking conviction in Florida was not a serious drug offense would produce an anomalous result. Id.

After James and Madera-Madera, the Supreme Court held that, when analyzing a statute to determine whether it is a violent felony under the ACCA, "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." Descamps v. United States, 133 S. Ct. 2276, 2282 (2013). The

Supreme Court later clarified that a statute is divisible when it lists alternative elements rather than merely alternative factual means of committing a single element. Mathis v. United States, 136 S. Ct. 2243, 2249 (2016).

Following Mathis, we relied on our holding in James to conclude that a conviction under Alabama's drug-trafficking statute was a serious drug offense under the ACCA. United States v. White, 837 F.3d 1225, 1235 (11th Cir. 2016). We explicitly held that Descamps and Mathis did not overrule or abrogate James, because they addressed only the question of when a court may use a modified categorical approach and did not address whether it is appropriate to infer intent to distribute based on the quantity of drugs. Id. at 1235 & n.13.

As applied here, our binding precedent establishes that Kitchen's conviction under Florida's drug-trafficking statute -- even if based on mere possession of the requisite amount of drugs -- is a controlled substance offense. While James addressed an ACCA provision with slightly different language from the Sentencing Guidelines, it established that Florida's drug-trafficking statute infers intent to distribute from the amount of drugs possessed, similar to Georgia's statute. James, 430 F.3d at 1154-55. In addition, Madera-Madera addressed language in a different guidelines provision identical to the "controlled substance offense" definition at issue here, and concluded that Georgia's drug-trafficking statute infers intent to distribute based on the amount of drugs possessed is a controlled

6

substance offense.  Madera-Madera, 333 F.3d at 1232-34.  Put together, James and Madera-Madera instruct that Florida's drug-trafficking statute, like Georgia's statute, infers intent to distribute based on the amount of the drugs and satisfies the "controlled substance offense" definition.

Notably, neither James nor Madera-Madera has been overruled by an en banc panel of this Court or by the Supreme Court, and we are therefore bound by that precedent.  White, 837 F.3d at 1235.  As we've explained, because the Supreme Court's decisions in Descamps and Mathis dealt only with whether a statute is divisible, they did not abrogate James.  White, 837 F.3d at 1235 & n.13. For the same reason, they did not abrogate Madera-Madera.

In addition, in Lipsey, we held that a sentencing court must look only to the elements of the statute rather than the facts of the offense.  Madera-Madera took the same approach.  And the district court here properly applied our law -- it did not determine that Kitchen actually had intent to distribute drugs, but instead held that the statute under which he was convicted implied intent from the amount of drugs he had.  Finally, although the quantity and type of drugs in James differed from those underlying Kitchen's conviction, Kitchen has pointed to no authority limiting the amount of drugs a state may rely upon to infer intent.  We thereafter affirm the district court's application of an increased his base offense level based on Kitchen's prior conviction.

7

We are also unconvinced by Kitchen's argument -- raised for the first time on appeal -- that his conviction under 18 U.S.C. § 922(g) is void. We've held that 18 U.S.C. § 922(g) is a facially constitutional use of Congress's Commerce Clause power, because it requires that the possession of the firearm or ammunition be in or affecting interstate or foreign commerce. Scott, 263 F.3d at 1274. The statute is constitutional as applied so long as the government proves some minimal nexus to interstate commerce, which it may accomplish by demonstrating that the firearm traveled in interstate commerce through testimony that the firearm was manufactured in a different state. United States v. Wright, 607 F.3d 708, 715-16 (11th Cir. 2010).

Here, the district court did not plainly err by failing to find that § 922(g) is unconstitutional. Our binding precedent in Wright and Scott establishes that § 922(g) is facially constitutional, as Kitchen concedes. Wright, 607 F.3d at 715-16; Scott, 263 F.3d at 1274. Furthermore, the statute is constitutional as applied here, because the government met its burden of showing a minimal nexus to interstate commerce through Kitchen's admission in the plea colloquy that the firearm was manufactured outside the state of Florida.

**AFFIRMED**.

8