[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14764
Non-Argument Calendar
_____

D.C. Docket No. 7:16-cr-00023-HL-TQL-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GREGORY LAMAR REID,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(November 2, 2018)

Before ROSENBAUM, JILL PRYOR and JULIE CARNES, Circuit Judges.

PER CURIAM:

Gregory Reid appeals his conviction and sentence for possession with intent to distribute cocaine. After careful review, we affirm.

**I.**

A grand jury indicted Reid on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). After he represented that he could not afford a lawyer, the district court appointed counsel for Reid. Reid initially pled guilty to the cocaine charge pursuant to a plea agreement, but the district court permitted him to withdraw the plea due to problems at sentencing. Reid then pled guilty pursuant to a plea agreement a second time and was sentenced. We recount these proceedings below.

Reid entered into an initial plea agreement with the government in which he agreed to plead guilty to the cocaine possession charge in exchange for the government's promise to dismiss the firearm charge. The district court accepted Reid's guilty plea. In preparation for sentencing, the probation office prepared a presentence investigation report ("PSI"), in which it deemed Reid a career offender pursuant to U.S.S.G. § 4B1.1(a) based on his prior Georgia convictions for aggravated assault and cocaine trafficking. Reid objected to the enhancement,

2

arguing that he, the government, and a representative of the probation office agreed, prior to entry of his plea, that he would not be categorized as a career offender.

At sentencing, the government explained that it lacked Reid's full criminal record when it represented that he would not be designated a career offender. Reid's lawyer accepted responsibility for failing to investigate fully Reid's criminal history, saying she was "ineffective" in failing to do so. Doc. 45 at 8.[1] In response, the district court asked the parties to weigh three options: allow Reid to be sentenced according to the career offender guideline, have the government agree to a lesser sentence, or allow Reid to withdraw or renegotiate his plea agreement. The district court continued the sentencing hearing.

At the continuation of the sentencing hearing, Reid's lawyer asked that Reid's guilty plea be withdrawn and new counsel appointed in light of her mistake. The district court declined to appoint new counsel but permitted Reid to withdraw his plea. Reid's lawyer explained that Reid "is going to hire other counsel" by "sell[ing] his home." Doc. 48 at 11. The district court responded:

> [L]et me say this, Mr. Reid. . . . You are welcome to hire any lawyer you want to. . . . This lady represents you because you represented to the Court, under oath, that you were not able to hire a lawyer. . . . So, you could be charged with perjury for that offense.

---

[1] "Doc. #" refers to the numbered entry on the district court's docket.

*Id.* The court continued:

> If you are able to hire a lawyer, you should have hired a lawyer before. If you want to hire a lawyer, that's fine, go on and do it. [Appointed counsel] will remain as your counsel until your lawyer, the lawyer that you hire, makes an entry of appearance in this case. In the meantime, this case is going to proceed.

*Id.* at 11-12.

Days later, Reid entered into a new plea agreement, pursuant to which he again agreed to plead guilty to the cocaine charge only. The other terms of the plea agreement were largely the same, except that Reid executed a specific appeal waiver in which he reserved his right to appeal the district court's determination that he should be classified as a career offender. At a change-of-plea hearing, the district court confirmed that Reid understood the charge against him, the range of possible penalties, and the appeal waiver, as well as that Reid had sufficient time to confer with and was satisfied with his lawyer. Reid stated that he wished to plead guilty because he was, in fact, guilty. The court, however, deferred accepting the plea until the sentencing hearing.

The probation office prepared a revised PSI that contained the same sentencing calculations, including the career offender enhancement. Based on the enhancement, Reid's guidelines range was 151 to 188 months' imprisonment. Reid again objected to his career offender designation. At the second sentencing

4

hearing, the district court overruled Reid's objection to the career offender enhancement and sentenced Reid to 188 months' imprisonment.

This is Reid's appeal.

## II.

On appeal, Reid challenges his conviction and sentence. As to his conviction, Reid argues that the district court violated his Sixth Amendment right to counsel of his choice by threatening him with perjury charges should he hire a lawyer. As to his sentence, Reid asserts that neither his prior conviction for assault nor his prior conviction for cocaine trafficking qualifies as a predicate offense for purposes of the career offender enhancement. We address these arguments in turn.

### A.    Sixth Amendment Challenge

Reid asserts that the district court threatened to charge him with perjury after he expressed his wish to retain private counsel and that the threat of perjury prevented him from making a voluntary decision whether to retain private counsel, thereby violating his Sixth Amendment right to counsel of his choice. The government counters that by pleading guilty a second time *after* the district court made its comments, Reid waived his Sixth Amendment challenge. We review *de novo* whether a defendant's guilty plea results in a waiver of his right to bring a particular claim on appeal. *See United States v. Patti*, 337 F.3d 1317, 1320 & n.4 (11th Cir. 2003). We agree with the government that Reid's claim is waived.

The district court made the comments to which Reid objects when it permitted him to withdraw his first guilty plea.  Days later, however, Reid entered into a new plea agreement.  During the plea colloquy at the change-of-plea hearing, the district court confirmed that Reid was pleading guilty freely and voluntarily; that he was in fact guilty; that he and his lawyer had discussed the case, including the possible sentence he faced; and that Reid was satisfied with his lawyer's representation of him.  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  This is because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Id.*  Put differently, "[a] defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992).  Reid does not argue that his plea was not made knowingly and voluntarily.

Nor did Reid preserve his right to appellate review of this claim via a conditional plea.  *See United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997) ("A defendant who wishes to preserve appellate review of a non-

6

jurisdictional defect while at the same time pleading guilty can do so only by entering a 'conditional plea' in accordance with [Federal Rule of Criminal Procedure] 11(a)(2)."). Because Reid waived his Sixth Amendment challenge, we affirm his conviction. We turn to his challenges to his career offender enhancement—challenges he did preserve via his conditional sentence appeal waiver.

## B.    Challenges to Career Offender Predicate Offenses

Reid next argues that neither of his prior Georgia convictions —for aggravated assault and cocaine trafficking—qualifies as a predicate offense under the career offender guideline. Precedent dictates otherwise.

We review *de novo* whether the career offender enhancement properly was imposed under the Sentencing Guidelines. *United States v. Whitson*, 597 F.3d 1218, 1220 (11th Cir. 2010). A defendant is deemed a career offender if he has at least two prior felony convictions for a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). A "crime of violence" is an offense punishable by a term of imprisonment of more than one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another" or is one of several enumerated offenses, including "aggravated assault." *Id.* § 4B1.2(a). A "controlled substance offense" is:

> an offense under federal or state law, punishable by imprisonment for
> a term exceeding one year, that prohibits the manufacture, import,

7

export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id*. § 4B1.2(b).

When determining whether a prior conviction qualifies as a career offender predicate offense, we apply a "categorical approach," looking only to the elements of the prior conviction and not to the underlying facts that led to the conviction. *United States v. Vail-Bailon*, 868 F.3d 1293, 1296 (11th Cir. 2017) (en banc), *cert. denied*, 138 S. Ct. 2620 (2018). We must presume that a conviction rested upon nothing more than the least of the acts a statute criminalizes and ask whether that act necessarily satisfies the definition under the guidelines. *Id.*

We are bound to follow prior panel precedent unless and until it is overruled or undermined to the point of abrogation by this Court sitting en banc or by the Supreme Court. *See United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003); *see also United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (noting that, although a decision of the Supreme Court may overrule or abrogate prior panel precedent, such a decision "must be clearly on point" (internal quotation marks omitted)). "[U]nder the prior-panel-precedent rule, we must follow the reasoning behind a prior holding if we cannot distinguish the facts or the law of the case under consideration." *Scott v. United States*, 890 F.3d 1239, 1257 (11th Cir. 2018). This rule applies even if a prior case was wrongly decided,

8

lacked legal analysis, or "failed to consider certain critical issues or arguments." *United States v. Lee*, 886 F.3d 1161, 1163 n.3 (11th Cir. 2018).

As Reid acknowledges, this Court previously has held that a prior conviction under Georgia's aggravated assault statute, O.C.G.A. § 16-5-21(a)(2), is a "crime of violence" under U.S.S.G. § 2L1.2, which contains an "enumerated crimes clause" identical to the one in the career offender guideline, U.S.S.G. § 4B1.2(a). *United States v. Morales-Alonso*, 878 F.3d 1311, 1320 (11th Cir. 2018). We interpret the definition of "crime of violence" consistently throughout the guidelines. *See United States v. Lockley*, 632 F.3d 1238, 1241 (11th Cir. 2011) (citing U.S.S.G. § 2L1.2 cases when interpreting "crime of violence" in U.S.S.G. § 4B1.2). And Reid does not argue that *Morales-Alonso* is inapplicable because it construed the "crime of violence" definition in U.S.S.G. § 2L1.2 rather than § 4B1.2. Thus, this is not a basis to distinguish our prior precedent. *See Scott*, 890 F.3d at 1257.

Reid argues instead that *Morales-Alonso* is distinguishable because in that case the Court failed to consider that aggravated assault in Georgia requires only a general intent to commit the offense, a lower *mens rea* than is required for an offense to qualify as a "crime of violence" under the guidelines. But under *Lee*, this is immaterial: the prior panel precedent rule applies even if *Morales-Alonso* failed to consider a persuasive argument as to why the aggravated assault statute

9

does not qualify as a crime of violence. 886 F.3d at 1163 n.3; *see United States v. Golden*, 854 F.3d 1256, 1257 (11th Cir. 2017) ("[E]ven if [a prior decision] is flawed, that does not give us, as a later panel, the authority to disregard it."), *cert. denied*, 138 S. Ct. 197 (2017). Thus, we are bound by *Morales-Alonso* to conclude that Reid's aggravated assault conviction was a proper predicate offense for his career offender enhancement.

We also are bound to conclude that Reid's cocaine trafficking conviction qualifies as a "controlled substance offense" for purposes of the career offender enhancement. The statute under which Reid was convicted provided criminal penalties for "[a]ny person who knowingly sells, manufactures, delivers, or brings into this state or who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent more of cocaine." O.C.G.A. § 16-13-31(a)(1) (2005). In *United States v. Madera-Madera*, this Court considered whether a conviction for methamphetamine trafficking under O.C.G.A. § 16-13-31(e), a different subsection of the same statute under which Reid was convicted, qualified as a "drug trafficking offense" under U.S.S.G. § 2L1.2. 333 F.3d 1228, 1230 (11th Cir. 2003).[2] That statute, much like the one under which Reid was

---

[2] The definition of "drug trafficking offense" under U.S.S.G. § 2L1.2 is "substantially the same" as the definition of "controlled substance offense" in U.S.S.G. § 4B1.2(b). *United States v. Orihuela*, 320 F.3d 1302, 1304 (11th Cir. 2003). Decisions interpreting one section are "analogous authorities" for interpreting the other section. *Id.*

convicted, provided criminal penalties for "[a]ny person who knowingly sells, manufactures, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine." O.C.G.A. § 16-13-31(e). The defendant in *Madera-Madera* argued that his conviction did not qualify as a drug trafficking offense because he merely possessed the methamphetamine, but we rejected that argument, looking to the structure and purpose behind Georgia's drug trafficking law. 333 F.3d at 1231-32.

The cocaine trafficking subsection of that Georgia statute mirrors the methamphetamine trafficking subsection in every relevant respect. Reid argues that it nonetheless does not qualify as a controlled substance offense because a person can violate the statute by "mere possession." Appellant's Br. at 27. But this argument was raised and rejected in *Madera-Madera* with respect to a nearly identical statute. We cannot distinguish this case's facts or law from *Madera-Madera*; thus, it binds us. *See Scott*, 890 F.3d at 1257. We therefore must affirm Reid's sentence.

### III.

For the foregoing reasons, Reid's conviction and sentence are affirmed.

**AFFIRMED.**

11