**F I L E D**

PUBLISH

**July 13, 2005**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

FELIPE HERRERA-ROLDAN,

Defendant-Appellee.

No. 04-2159

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR 04-30 BB)**

Submitted on the briefs:[*]

David C. Iglesias, United States Attorney, Norman Cairns, Assistant United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellant.

Peter J. Giovannini, Las Cruces, New Mexico, for Defendant-Appellee.

Before **O'BRIEN**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

**McCONNELL**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In October 2003, Defendant Felipe Herrera-Roldan, a citizen of Mexico, was arrested near Truth or Consequences, New Mexico without immigration documentation allowing him to be in the United States. He pled guilty to illegally entering the United States after deportation in violation of 8 U.S.C. §§ 1326(a) and (b)(2). The only issue at sentencing (and in this appeal) was whether his prior Texas conviction for possession of more than 50 pounds, but no more than 2000 pounds, of marijuana merited a twelve-level adjustment as a "drug trafficking offense" rather than an eight-level adjustment as an "aggravated felony" under the United States Sentencing Guidelines § 2L1.2(b)(1). The district court gave Mr. Herrera the lower adjustment, and the government appeals. We agree with the district court and affirm.

I.

The base offense level for unlawfully entering or remaining in the United States is eight. U.S.S.G. § 2L1.2(a). The Sentencing Guidelines provide enhancements to the base offense level on the following grounds:

> If the defendant previously was deported, or unlawfully remained in the United States, after—
> . . .
> (B) a conviction for a felony *drug trafficking offense* for which the sentence imposed was 13 months or less, increase by 12 levels;
> (C) a conviction for an *aggravated felony*, increase by 8 levels.

U.S.S.G. § 2L1.2(b)(1) (emphasis added).  We must decide whether Mr. Herrera's prior Texas conviction for possession of marijuana is a "drug trafficking offense" meriting a twelve-level enhancement (as the government argues) or an "aggravated felony" meriting an eight-level enhancement (as the district court concluded).  We review the district court's interpretation of the Sentencing Guidelines de novo.  *United States v. Castro-Rocha*, 323 F.3d 846, 848–49 (10th Cir. 2003).

A. "Drug Trafficking Offense"

The Guidelines define "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 2L1.2(b)(1), Application Note 1(B)(iv).  Mr. Herrera was convicted under a Texas statute prohibiting mere "possess[ion]"[1]—not possession "with intent to manufacture, import, export, distribute, or dispense."  *Id.*  Based solely on the fact of conviction and the terms of the Texas statute, then, we conclude that Mr. Herrera's prior conviction was not a "drug trafficking offense" under U.S.S.G. §

---

[1]Texas Health & Safety Code § 481.121 ("Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally possesses a usable quantity of marihuana.").

2L1.2(b)(1)(B). *Cf. Taylor v. United States*, 495 U.S. 575, 602 (1990) (holding that the Armed Career Criminal Act, 18 U.S.C. § 924(e), "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense").[2]

1.

The government argues that we can look beyond the terms of the Texas statute, which makes no mention of an intent to distribute, and infer such an intent from Mr. Herrera's underlying conduct. Mr. Herrera was convicted of possessing more than 50 pounds, but not more than 2000 pounds, of marijuana. The government argues that from such a large quantity we should infer an intent to distribute. According to the government, this inference is permissible because the relevant Guidelines provision, U.S.S.G. § 2L1.2(b)(1), Application Note 1(B)(iv), defines "drug trafficking offense" not with reference to the "elements" of the state crime but with reference to the underlying conduct. In other words, we should draw inferences from Mr. Herrera's underlying conduct because the relevant guideline allows us to do so.

---

[2]In the context of the Armed Career Criminal Act, the Supreme Court has recognized an exception to this categorical approach in "'a narrow range of cases where a jury . . . was actually required to find all the elements of' the [relevant] offense." *Shepard v. United States*, 125 S.Ct. 1254, 1258 (2005) (quoting *Taylor*, 495 U.S. at 599). We need not address the applicability of this exception in the context of U.S.S.G. § 2L1.2(b) because the government does not argue that a jury in Mr. Herrera's case was required to find possession with intent to distribute.

On this point the government offers, by way of comparison, the definition of "crime of violence." U.S.S.G. § 2L1.2, Application Note 1(B)(iii). A crime of violence includes "any offense under federal, state, or local law *that has as an element* the use, attempted use, or threatened use of physical force against the person of another." *Id.* (emphasis added). According to the government, the phrase "that has as an element" directs the court's attention to the terms of the statute of conviction, *see, e.g.*, *United States v. Reyes-Castro*, 13 F.3d 377, 379 (10th Cir. 1993); no such phrase appears in the definition of "drug trafficking offense," and therefore we can draw inferences about the prior conviction from Mr. Herrera's underlying conduct.

We disagree. The Guidelines define "drug trafficking offense" as "an offense under federal, state, or local law that prohibits . . . the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2(b)(1), Application Note 1(B)(iv). This definition requires us to ask whether the "federal, state, or local law [under which the defendant was convicted] prohibits" possession with intent to distribute. The focus is not on the defendant's conduct, but on what the state law prohibits. This confines our inquiry to the terms of the statute of conviction just as much as the phrase (in the definition of crime of violence) "that has as an element."

A more illuminating comparison is to the Guidelines' definition of "firearms offense," which includes "[a]n offense under state or local law *consisting of conduct* that would have been an offense under [certain federal statutes] if the offense had occurred within the special maritime and territorial jurisdiction of the United States." U.S.S.G. § 2L1.2, Application Note 1(B)(v)(VI) (emphasis added); *see also id.*, Application Note 1(B)(ii) (defining "child pornography offense" in similar terms). This definition asks whether the "offense . . . consist[s] of conduct" that would violate other federal statutes. Thus, it at least arguably directs our attention to the defendant's underlying conduct; the definition of "drug trafficking offense" (whether the "federal, state, or local law . . . prohibits" possession with intent to distribute) does not. We therefore decline the government's invitation to draw inferences about an intent to distribute from Mr. Herrera's underlying conduct.

2.

The government also asks us to infer an intent to distribute based on the structure of the Texas statutory scheme. It bases this argument on the Eleventh Circuit's opinion in *United States v. Madera-Madera*, 333 F.3d 1228, 1233-34 (11th Cir. 2003), where the question was whether a defendant's prior Georgia conviction for possessing more than 28 grams of methamphetamine constituted a "drug trafficking offense" under U.S.S.G. § 2L1.2(b)(1)(B). Georgia divided

drug crimes into three tiers with increasing levels of punishment: (1) possession of any amount of a controlled substance, O.C.G.A. § 16-13-30(a); (2) manufacture, delivery, distribution, dispensing, administering, selling, or possession with intent to distribute any amount of a controlled substance, O.C.G.A. § 16-13-30(b); and (3) an offense called "trafficking," which the Georgia Supreme Court says is "a yet more serious offense," and which includes manufacture, delivery, importation—or mere possession—of more than a specified amount of a controlled substance (28 grams of methamphetamine or cocaine, 10 pounds of marijuana, etc.), O.C.G.A. § 16-13-31. *See Bassett v. Lemacks*, 258 Ga. 367, 370 (1988). The defendant in *Madera-Madera* pled guilty to possession of 87 grams of methamphetamine, a "trafficking" offense under Georgia law.

The Eleventh Circuit concluded that the conviction also constituted a "drug trafficking offense" under U.S.S.G. § 2L1.2(b)(1)(B). According to the court, because the Georgia trafficking statute punished possession of more than a specified amount of drugs more severely than either simple possession or possession with intent to distribute, the statute "necessarily infers an intent to distribute once a defendant possesses a certain amount of drugs." *Madera-Madera,* 333 F.3d at 1232. The Georgia trafficking statute therefore satisfied the

Guidelines' definition of "drug trafficking offense," subjecting the defendant to a twelve-level enhancement under U.S.S.G. § 2L1.2(b)(1)(B).

The government argues that the reasoning of *Madera-Madera* applies equally here because Texas punishes possession of more than 50 pounds, but 2000 pounds or less, of marijuana more severely than it punishes possession (and sometimes even delivery) of lesser amounts of marijuana. According to the government, "Logically, the Texas criminal code punishes the possession of greater amounts of marijuana because greater amounts indicate an intent to distribute the marijuana." Aplt. Br. 13. We, however, find *Madera-Madera* distinguishable based on differences between the Georgia and Texas drug statutes. Georgia draws a clear line at a particular quantity of drugs—10 pounds, for marijuana—at which point it no longer distinguishes between simple possession and other acts, such as manufacture, delivery, or possession with intent to distribute. Instead, it lumps all of those acts together, including simple possession, and subjects the entire category to more severe punishment. This is what gives rise to the inference that Georgia is punishing not just simple possession, but possession with an implied intent to distribute. By contrast, the Texas code gradually increases punishment for *both* possession and delivery based

on the quantity of drug;[3] there is no designated quantity of drugs at which

---

[3]Texas Health & Safety Code § 481.121 sets forth the graduated punishment scheme for simple possession:

> (b) An offense [of simple possession of marihuana] is:
> (1) a Class B misdemeanor if the amount of marihuana possessed is two ounces or less;
> (2) a Class A misdemeanor if the amount of marihuana possessed is four ounces or less but more than two ounces;
> (3) a state jail felony if the amount of marihuana possessed is five pounds or less but more than four ounces;
> (4) a felony of the third degree if the amount of marihuana possessed is 50 pounds or less but more than 5 pounds;
> (5) a felony of the second degree if the amount of marihuana possessed is 2,000 pounds or less but more than 50 pounds; and
> (6) punishable by imprisonment in the institutional division of the Texas Department of Criminal Justice for life or for a term of not more than 99 years or less than 5 years, and a fine not to exceed $50,000, if the amount of marihuana possessed is more than 2,000 pounds.

The graduated punishment scheme for delivery of marijuana is similar:

> (b) An offense [of delivery of marihuana] is:
> (1) a Class B misdemeanor if the amount of marihuana delivered is one-fourth ounce or less and the person committing the offense does not receive remuneration for the marihuana;
> (2) a Class A misdemeanor if the amount of marihuana delivered is one-fourth ounce or less and the person committing the offense receives remuneration for the marihuana;
> (3) a state jail felony if the amount of marihuana delivered is five pounds or less but more than one-fourth ounce;
> (4) a felony of the second degree if the amount of marihuana delivered is 50 pounds or less but more than five pounds;
> (5) a felony of the first degree if the amount of marihuana delivered is 2,000 pounds or less but more than 50 pounds; and
> (6) punishable by imprisonment in the institutional division of the

(continued...)

possession is treated the same as delivery and subjected to more severe punishment. In Mr. Herrera's case, for example, possession of more than 50 pounds, but no more than 2000 pounds, of marijuana is a second-degree felony. Texas Health & Safety Code § 481.121(b)(5). Delivery of the same amount of marijuana is punished more severely, as a first-degree felony. *Id.* § 481.120(b)(5). The Texas statutory scheme therefore does not imply an intent to distribute from the fact of possession, and we are left with the conclusion, based solely on the fact of conviction and the terms of the Texas statute, that Mr. Herrera's prior conviction was not a "drug trafficking offense" under U.S.S.G. § 2L1.2(b)(1)(B).

B. "Aggravated Felony"

That leaves the question of whether Mr. Herrera's prior Texas conviction constitutes an "aggravated felony" for purposes of the eight-level enhancement under U.S.S.G. § 2L1.2(b)(1)(C). Our precedent says that it does, *United States v. Castro-Rocha*, 323 F.3d 846 (10th Cir. 2003), and rightly so. The Guidelines

---

[3](...continued)
Texas Department of Criminal Justice for life or for a term of not more than 99 years or less than 10 years, and a fine not to exceed $100,000, if the amount of marihuana delivered is more than 2,000 pounds.

Texas Health & Safety Code § 481.120.

-10-

define "aggravated felony" to include "a *drug trafficking crime* (as defined in

section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B) (emphasis added).[4] A

"drug trafficking crime," as defined in section 924(c) of Title 18, includes "any

felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)."

18 U.S.C. § 924(c)(2). Thus, Mr. Herrera's Texas conviction is an "aggravated

felony" if it is (1) a felony under Texas law, *see* 21 U.S.C. § 802(13) (defining

"felony" as "any Federal or State offense classified by applicable Federal or State

law as a felony") and (2) punishable under the Controlled Substances Act. *United*

*States v. Cabrera-Sosa*, 81 F.3d 998, 1000 (10th Cir. 1996).

It is both. Texas law makes simple possession of more than 50 pounds, but

2000 pounds or less, of marijuana a felony. Texas Health & Safety Code §

481.121(b)(5). Simple possession of marijuana is punishable under the

Controlled Substances Act. 21 U.S.C. §§ 812, 844(a). Therefore, Mr. Herrera's

prior Texas conviction is an "aggravated felony" under U.S.S.G. §

2L1.2(b)(1)(C), and the district court was correct to apply an eight-level

enhancement.

---

[4]We refer to 8 U.S.C. § 1101(a)(43)(B) for the definition of "aggravated felony" because the relevant Guidelines Application Note states: "For purposes of subsection (b)(1)(C), 'aggravated felony' has the meaning given that term in [8 U.S.C. § 1101(a)(43)]." U.S.S.G. § 2L1.2, Application Note 3(A).

The government argues that this conclusion is internally inconsistent because, in order to conclude that Mr. Herrera's prior conviction is an "aggravated felony," we must first conclude (based on the cross references in the Guidelines) that it is a "drug trafficking crime" as defined by 18 U.S.C. § 924(c). According to the government, it is inconsistent to conclude that Mr. Herrera's prior conviction is a "drug trafficking crime" under 18 U.S.C. § 924(c) but not a "drug trafficking offense" under U.S.S.G. § 2L1.2(b)(1)(B).

This argument treats the terms "drug trafficking crime" under 18 U.S.C. § 924(c) and "drug trafficking offense" under U.S.S.G. § 2L1.2(b)(1)(B) as synonyms, when they are not. Congress has defined a "drug trafficking crime" as including "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)," 18 U.S.C. § 924(c)(2). This can include simple possession. *See* 21 U.S.C. § 844(a). The Sentencing Commission, on the other hand, defined "drug trafficking offense" as "an offense under federal, state, or local law that prohibits . . . the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2(b)(1), Application Note 1(B)(iv). This does not include simple possession. So it is not inconsistent to conclude that Mr. Herrera's simple-possession conviction is a "drug trafficking crime" under 18 U.S.C. § 924(c)(2), and therefore an "aggravated felony," but not a "drug trafficking offense" under U.S.S.G. § 2L1.2(b)(1).

Next, the government argues that treating Mr. Herrera's conviction as an "aggravated felony" leads to anomalous sentencing results. Because Texas punishes "possession" of marijuana and "delivery" of marijuana under different statutes, a conviction for "possession" of a large amount of marijuana (say, 2000 pounds) can be an "aggravated felony" subject to an eight-level enhancement, while a conviction for "delivery" of a small amount of marijuana (say, a half-ounce) is a "drug trafficking offense" subject to a twelve-level enhancement. This, according to the government, thwarts the purpose of U.S.S.G. § 2L1.2(b)(1), which was "to insure that those illegal re-entry defendants with [more] serious prior offenses receive more serious sentences." Aplt. Br. 17.

We see the point, but it is not strong enough to alter our straightforward reading of the Guidelines. The Sentencing Commission could have distinguished a "drug trafficking offense" from a drug-related "aggravated felony" based on the quantity of drugs involved. This is how Georgia distinguishes its "trafficking" offense from simple possession or delivery. Or, even more simply, the Sentencing Commission could have included in the present definition of "drug trafficking offense" offenses under laws that prohibit possession of more than a specified amount of a controlled substance. But this is not what the Sentencing Commission did. Instead, it asked us to determine whether the "federal, state, or local law [under which the defendant was convicted] prohibits" possession with

-13-

intent to distribute.  We cannot rewrite the Sentencing Guidelines simply because they might, in future cases, produce an anomalous result.  In this case, an eight-level enhancement for Mr. Herrera is appropriate.  If the government is concerned that a straightforward reading of the Guidelines might produce anomalous results in future cases, it should direct its argument to the Sentencing Commission.

II.

The judgment of the district court is **AFFIRMED**.