IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 11, 2007

Charles R. Fulbruge III
Clerk

_____

No. 06-20142
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON JERMAINE FORD,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas

_____

ON PETITION FOR REHEARING

Before DAVIS, DENNIS, and PRADO, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In response to the Petition for Rehearing filed by the government, we

withdraw the prior panel opinion in its entirety and substitute the following:

The question before this court is whether a charge and conviction for

"possession with an intent to deliver" a controlled substance under section

1

481.112(a) of the Texas Health and Safety Code can be used as a basis for a sentence enhancement as a "controlled substance offense" under U.S. Sentencing Guidelines Manual ("USSG") § 2K2.1(a)(4)(A) (2005). "Controlled substance offense" is defined in USSG § 4B1.2(b). USSG § 2K2.1 cmt. n. 1. USSG § 4B1.2(b) states:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

We hold that the conviction in this case for "possession with intent to deliver" under this Texas statute qualifies as a "controlled substance offense." "Possession with intent to deliver" is indistinguishable from the offense of "possession with intent to distribute," one of the offenses listed in USSG's definition of a "controlled substance offense." We therefore AFFIRM Ford's sentence.

## FACTS

On July 14, 2005, Houston police officers Tran and Ponder responded to a call from an individual stating that he had just seen the person who shot him a few days earlier. The officers went to the stated address and saw the alleged shooter inside the apartment who matched the description provided. Returning to the apartment with a Bureau of Alcohol, Firearms, and Tobacco

(ATF) Special Agent, the agents confronted the suspect, later identified as defendant Jason Jermaine Ford, and the apartment lessee, Crystal McConnell, at the door. McConnell denied having a firearm in the apartment and consented to a search. While searching, the defendant informed the officers that there was a .32 caliber firearm on a chair, which Officer Tran immediately recovered. Ford was then arrested and advised of his rights. The ATF agent determined that the firearm was manufactured outside of the state of Texas.

On September 8, 2005, a federal grand jury indicted the defendant on one count of possession of a firearm after being convicted of a felony offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Ford entered a guilty plea on November 18, 2005.

The presentence report calculated Ford's total offense level to be seventeen, starting with a base offense level of twenty, pursuant to USSG § 2K2.1(a)(4)(A) for a prior "controlled substance offense" and then subtracting three levels for the acceptance of responsibility pursuant to USSG § 3E1.1(a) and (b). A total offense level of seventeen combined with a criminal history category of IV resulted in an imprisonment range of thirty-seven to forty-six months. Ford objected to the presentence report, arguing that his conviction was under a Texas statute that penalized acts and intents outside the USSG's

"controlled substance offense" definition. As a result, Ford argued that his conviction should not qualify as a "controlled substance offense." Ford's charging documents, the indictment, and the judgment were available to the district court judge. No underlying facts about the conviction were provided in these documents.

Based on a comparison between the language of the conviction offense and underlying statute as found in these documents with the definition of "controlled substance offense" in the USSG, the court below overruled Ford's objection. Ford was therefore sentenced on February 10, 2006, to serve thirty-seven months followed by three years of supervised release.

Analysis

This court reviews the district court's interpretation and application of the USSG de novo. United States v. Zuniga-Peralta, 442 F.3d 345, 347 (5th Cir. 2006). Because Ford's objection was preserved at trial, we review the record de novo to determine whether the district court's error was harmless. United States v. Lopez-Urbina, 434 F.3d 750, 765 (5th Cir. 2004).

The issue presented before this court is whether a conviction for "possession with intent to deliver" criminalizes conduct beyond that which is subject to sentencing enhancement as a "controlled substance offense." Ford relies on two cases which he contends demonstrate that his prior

4

offense–possession of intent to deliver–criminalizes conduct not subject to this enhancement. In two closely analogous decisions, this court held similar convictions to be broader than a nearly identical USSG definition of another offense subject to sentencing enhancement.

In United States v. Garza-Lopez, 410 F.3d 268, 271 (5th Cir. 2005), the defendant was previously convicted for "transporting/selling a controlled substance" under section 11379(a) of the California Health & Safety Code and for that previous conviction, the district court added a sentence enhancement for a "drug trafficking offense" under USSG § 2L1.2(b)(1)(A)(i). See USSG § 2L1.2 cmt. n. 1(B)(iv) (defining "drug trafficking offense").[1] This court held that the "transporting/selling a controlled substance" offense under the California statute was broader than the USSG's definition of "drug trafficking offense." Id. at 274-75. See also United States v. Kovac, 367 F.3d 1116, 1119 (9th Cir. 2004); United States v. Navidad-Marcos, 367 F.3d 903 at 907-908 (9th Cir. 2004). The California statute, for instance, "criminalizes the transportation of a controlled substance for personal use and offers to transport, sell, furnish, administer, or give away a controlled substance."

---

[1] "'Drug trafficking offense' means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." USSG § 2L1.2 cmt. n. 1(B)(iv).

Garza-Lopez, 410 F.3d at 274.  None of the listed activities is covered by the "drug trafficking offense" definition, which "covers only the manufacture, import, export, distribution, or dispensing of a controlled substance (or possession with the intent to do any of these things)." Id.  Therefore this court concluded the district court had committed plain error in adding a sentencing enhancement, because the basis for defendant's underlying conviction could be conduct that lies outside the narrow definition of a "drug trafficking offense." Id. at 275.

In United States v. Gonzales, 484 F.3d 712, 714-15 (5th Cir. 2007) (per curiam), this court held that a conviction for unlawful delivery of a controlled substance under a different subsection of  section 481.112 of the Texas Health and Safety Code, was broader than the limited set of offenses subject to a sentencing enhancement under the USSG's definition of "drug trafficking offense." In Gonzales, the court noted that "delivery" encompasses an "offer to sell" under the Texas statutory definition, and an "offer to sell" is not one of the acts included within the "drug trafficking offense" definition. Id.  See also Tex. Health & Safety Code Ann. § 481.002(8) (defining "deliver"); Donley v. State, 140 S.W.3d 428, 429 (Tex. App. 2004) (interpreting "delivery" as any actual transfer, constructive transfer, or offer to sell); Garza-Lopez, 410 F.3d at 273 (listing "offers to . . . sell" as conduct outside USSG's definition of "drug

6

trafficking offense").

Neither of the above cases controls the outcome of this appeal.

The significant distinction in this case is that unlike the two cases discussed above, the conviction here was for possession with the intent to deliver rather than just delivery or transportation.[2]  In the instant case, Ford's indictment charged him with possession with intent to deliver.  According to the USSG, the term "controlled substance offense" includes offenses that prohibit the "possession of a controlled substance . . . with intent to . . . distribute."  USSG § 4B1.2(b).  We agree with the government that it is pure sophistry to distinguish between the conduct of one who possesses drugs with intent to deliver those drugs and one who possesses drugs with intent to distribute them.   United States v. Palacios-Quinonez, 431 F.3d 471 (5th Cir. 2005), demonstrates this point.

In Palacios-Quinonez, the defendant had previously been convicted under a California statute that prohibited both possession of drugs for sale

_____

[2]"Drug trafficking offense," and not "controlled substance offense," is the operative USSG offense in the two analogous cases described above. However, the definitions of "drug trafficking offense" and "controlled substance offense" are almost identical.  Compare USSG § 2L1.2 cmt. n. 1(B)(iv)("drug trafficking offense"), with USSG § 4B1.2(b) ("controlled substance offense").  Any minor textual differences do not control in this case. Therefore, the definitions of "controlled substance offense" and "drug trafficking offense" are identical for our purposes here.  Cf. United States v. Gonzalez-Borjas, 125 F.App'x. 556, 559 & n. 9 (5th Cir. 2005) (unpublished).

(which was conceded to be a drug trafficking offense) and purchase of drugs for purpose of sale. Because it was impossible to determine under which prong Palacios-Quinonez was convicted, the court had to determine whether a "purchase for purpose of sale" also fell within the definition of a drug trafficking offense. In Palacios-Quinonez, this court noted one major difference between a conviction for an "offer to sell" controlled substances and a conviction for a "purchase for sale" of a controlled substance. One may "offer to sell" drugs without possessing those drugs. One who "purchases for sale" however has either actual or constructive possession of the controlled substance. We concluded that the offense of "purchase for sale" was equivalent to the controlled substance "possession with intent to distribute."

For purposes of qualifying as a controlled substance offense, Ford's conduct is indistinguishable from Palacios' conduct. Ford possessed drugs with intent to deliver or pass them on to another. Palacios purchased drugs (and thereby actually or constructively possessed them) and intended to sell them to another. The conduct in both instances is equivalent to the drug trafficking offense, possession of a controlled substance with intent to distribute.

Accordingly, the district court did not err in enhancing Ford's sentence

8

pursuant to USSG § 2K2.1(a)(4)(A).[3]  For the reasons stated above, we

therefore AFFIRM the sentence.

AFFIRMED.

---

[3] In order to preserve the argument for further review, Ford also contends that his indictment under 18 U.S.C. § 922(g)(1) is unconstitutional both facially and as applied.  An indictment under 18 U.S.C. § 922(g)(1) requires an effect on interstate commerce.  Ford argues that where the only interstate commerce nexus is the fact that the firearm at some point in the past traveled across state lines contravenes the limits of the commerce power as defined in United States v. Lopez, 514 U.S. 549, 551 (1995).  But he concedes his argument is foreclosed by several opinions by this court.  See e.g., United States v. Daughtery, 264 F.3d 513, 518 (5th Cir. 2001).

DENNIS, Circuit Judge, dissenting from grant of panel rehearing.

Our original unanimous panel decision was based solidly on our prior panels' precedents. Nevertheless, despite our basic rule of stare decisis, the new panel majority now refuses to follow those circuit precedents because it deems them to be founded on "sophistry." As the Supreme Court has stated:

> Very weighty considerations underlie the principle that courts should not lightly overrule past decisions. Among these are the desirability that the law furnish a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; the importance of furthering fair and expeditious adjudication by eliminating the need to relitigate every relevant proposition in every case; and the necessity of maintaining public faith in the judiciary as a source of impersonal and reasoned judgments. The reasons for rejecting any established rule must always be weighed against these factors.

Moragne v. States Marine Lines, Inc., 398 U.S. 375, 403 (1970).

These weighty considerations are acutely important on a seventeen- member court sitting in panels of three. Because the majority disregards these considerations and the additional needs underlying our own circuit rules requiring adherence to precedent, I must respectfully dissent.

## I. Logic not sophistry supports Ford's position and the original panel opinion

Our original opinion correctly concludes that the Texas offense of

10

"possession with an intent to deliver" is "broader"[1] than the federal sentencing guideline's "possession with an intent to distribute" offense, a controlled substance offense that triggers a federal sentence enhancement. This conclusion is a direct logical consequence of our prior panel's comparison of the same state statute and a substantively identical sentencing guideline in United States v. Gonzales, 484 F.3d 712 (5th Cir. 2007).[2] As in Gonzales, our task is to engage in a Taylor categorical analysis to determine whether the elements of the state statutory offense is a type of offense that triggers federal sentence enhancement. Id. at 714-15. A quick review of the straightforward logic that applies here should avoid any hint of "sophistry."

A. Texas Offense of "Delivery" Is Not A Controlled Substance Offense of "Distribution"

The Texas offense of "delivery of a controlled substance" provides three ways that this offense may be committed: the actual transfer, the

---

[1]That is, the state statute contains one or more crime definitions, or ways that the statute may be violated, that do not constitute a "controlled substance offense" under USSG § 4B1.2(b). The state statutory offense therefore "encompasses activity that does not fall within the definition of" "controlled substance offense" under USSG § 4B1.2(b). *See United States v. Garza-Lopez,* 410 F.3d 268, 274 (5th Cir. 2005).

[2]*Gonzales* held that the Texas offense of "delivery" is not a "drug trafficking offense" subject to federal sentence enhancement. 484 F.3d at 714-15. The federal sentencing guideline offense in *Gonzales* ("drug trafficking offense") has an identical definition as the guideline offense in this case ("controlled substance offense"). *Compare* USSG §§ 4B1.2(b), 2K2.1 cmt. n. 1 (defining "controlled substance offense") *with* USSG § 2L1.2 cmt. n. 1(B)(iv) (defining "drug trafficking offense.").

11

constructive transfer, and the offer to sell a controlled substance.[3]

Gonzales establishes that because the mere offer to sell controlled substances can form part of a crime under the Texas statute but not under the federal guidelines, there is a discrepancy between the state and federal offense definitions in this respect.[4] Thus, when a Texas offender enters an undifferentiated guilty plea to delivery of controlled substances he may be convicting himself only of delivery by offer to sell, a type of Texas crime that is not defined as the "distribution of controlled substances," a controlled substance offense under the federal guidelines.[5]

Therefore, under Gonzales, a Texas "delivery" offense is broader than the controlled substance offense of "distribution" that triggers a federal sentence enhancement.

B. Taylor Analysis Requires Us to Compare the Elements of the Offenses

In Garza-Lopez, we said "a district court looks to the elements of a prior offense, rather than to the facts underlying the conviction, when classifying a prior offense for sentence enhancement purposes." 410 F.3d at 273 (citing Taylor v. United States, 495 U.S. 575, 602 (1990)).

Texas case-law holds "possession with an intent to deliver" comprises two separate elements: "possession" and an "intent to

---

[3] Texas Health & Safety Code § 481.002(8): "'Deliver' means to transfer, actually or constructively, to another a controlled substance...[or to] offer[] to sell a controlled substance. . . ."

[4] *Gonzales*, 484 F.3d at 714-15.

[5] *Id.*

deliver."[6] Federal case-law holds "possession with an intent to distribute" comprises two separate elements: "possession" and an "intent to distribute."[7]

Therefore, under Taylor, we should compare the offense elements: "possession" with "possession" and "intent to distribute" with "intent to deliver."

C. There Is No Dispute About the Equivalence of "Possession"

The parties do not question whether "possession" in Ford's conviction means "possession" for federal sentencing purposes.

D. "Intent to Deliver" Encompasses Intent Not Defined as an "Intent to Distribute"

Texas case-law holds that an "intent to deliver a controlled substance" is the intent to complete a "delivery of a controlled substance"

---

[6]*See, e.g., Taylor v. Texas,* 106 S.W.3d 827, 830-31 (Tex. App. 2003).

[7]USSG § 4B1.2(b) states:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Under a straightforward reading of the statute, possession with intent to distribute includes at least two elements: "simple possession" and "an intent to distribute." *See, e.g., United States v. Lacy,* 446 F.3d 448, 454 (3d Cir. 2006) ("Thus, the elements of the base offense are (1) knowing or intentional (2) possession (3) with intent to distribute (4) a controlled substance.") (describing a possession with intent to distribute controlled substance offense under federal law); *United States v. Montanez*, 442 F.3d 485, 492 (6th Cir. 2006) ("It is abundantly clear from the plain language of the statutes of conviction that each contains only the element of 'possession' and does not contain the element of 'intent to distribute.'")

13

offense.[8] Federal case-law holds that an "intent to distribute a controlled substance" is the intent to complete a "distribution of controlled substance" offense.[9]

A Texas "delivery of a controlled substance" offense is broader than a "distribution of a controlled substance" offense that triggers a federal sentence enhancement.

Therefore, Taylor's comparison of elements concludes that "possession with intent to deliver" is "broader" and not equivalent to "possession with intent to distribute," because the "intent to deliver" element includes a different kind of intent, i.e., intent to "offer to sell," which is a type of intent that is not an "intent to distribute" under the federal sentencing guidelines.

E. Gonzales and Taylor Require The Conclusion Reached by the Original Opinion

Based on previous sections, because the mere intent to offer to deliver drugs can form part of a crime under the Texas statute but not under the  federal guidelines, there is a discrepancy between the state and federal crime definitions in this respect. When a Texas offender enters an undifferentiated guilty plea of possession with intent to deliver

---

[8]*See, e.g., Pitts v. Texas,* 731 S.W.2d 687, 691 (Tex. App. 1987) (citing *Gonzales v. Texas,* 638 S.W.2d 41,44 (Tex. App. 1982)).  Whether possession is involved does not change the truth of this statement, because an offense of "delivery," including an "offer to sell" offense, does not differentiate between delivery or "offer to sell" convictions with possession and those without. *See Lopez v. Texas*, 108 S.W.3d 293, 300 (Tex. Crim. App. 2003) (holding that offer to sell and possession of drugs to complete that specific sale is one single offense); *Pena v. Texas*, 776 S.W.2d 746, 748-49 (Tex. App. 1989) (finding defendant's actual possession and attempted delivery of marihuana as sufficient evidence for a conviction under an "offer to sell" theory.).

[9]*See*, *e.g., United States v. Contreras,* 895 F.2d 1241, 1244 (9th Cir. 1990).

he may be pleading guilty to only possession with intent to deliver by offer to sell, a type of Texas crime that is not defined as a controlled substance offense by the federal guidelines.[10]

## II. Other Panels Agree With the Original Opinion's Logic

The previous section demonstrates that the reasoning in the original opinion was not sophism, but straightforward syllogistic logic and required by previous case-law. The mere feeling by even a number of federal judges that a statutory offense of "possession with intent to offer to sell" should either be included in the guidelines definition or deleted from the Texas statute is, of course, not grounds for us to alter the plain words of the statute and the guidelines. See United States v. Herrera-Roldan, 414 F.3d 1238, 1244 (10th Cir. 2005) ("We cannot rewrite the Sentencing Guidelines simply because they might, in future cases, produce an anomalous result.").[11] As concluded above, our original panel decision in Ford is the logical consequence of Gonzales and Taylor. By concluding otherwise, the majority ignores the clear logical implications of precedent.

Subsequent unpublished decisions by other panels have reached the same result as our original panel opinion. For example, one panel applied the same reasoning to the same Texas statute of conviction, i.e.,

---

[10]*Gonzales,* 484 F.3d at 714-15.

[11] Moreover, as we stated in *Gonzales,* we look at the "common, ordinary and contemporary understanding" of an offense only if the offense is not statutorily defined. Since the definition of "possession with intent to deliver a controlled substance" is statutorily defined, the common, ordinary, and contemporary understanding of the offense is irrelevant. *Gonzalez*, 484 F.3d at 716.

possession with intent to deliver, even though our original opinion did not bind their decision as our opinion was pending panel rehearing. See United States v. Barrera-Castro, 232 F. App'x. 429 (5th Cir. May 24, 2007) (Smith, Wiener, Owen, JJ.) (citing United States v. Gonzales, 484 F.3d 712, 715-17 (5th Cir. 2007) (King, Wiener, Owen, JJ.)); United States v. Lozoya, 232 F. App'x 431 (5th Cir. May 30, 2007) (Smith, Wiener, Owen, JJ.). A different panel adopted and applied the reasoning of our original panel decision to a Colorado conviction for possession of drugs with intent to either sell or distribute in which "sell" was statutorily defined to include an "offer to sell." See United States v. Flores-Meras, 234 F. App'x 307 (5th Cir. July 16, 2007) (Jolly, Clement, Owen, JJ.). In other words, the panel concluded that "possession with intent to offer to sell" under Colorado law is not "possession with intent to distribute" for federal sentence enhancement purposes. Id. The panels in Garza-Lopez (King, Garza, Benavides, JJ.) and Gonzales (King, Wiener, Owen, JJ.) considered and agreed with defendants who successfully raised arguments very similar to the arguments in this case. In sum, by pejoratively calling the reasoning of our original panel opinion "sophistry," the new majority here is hurling the epithet of "sophist" at no less than a majority of this court, including all members of this panel.[12]

III. Adopting the New Rule Creates An Inconsistency in

---

[12] In total, Judges King, Jolly, Davis, Smith, Wiener, Garza, Benavides, Dennis, Clement, Owen, and Prado all agreed at one point with these arguments.

Sentencing

Not only does the majority's opinion fail to follow the logical implications of precedent, the majority's new opinion will also create an inconsistency in our sentencing practice. Under Texas law, "possession with intent to deliver a controlled substance" is a lesser-included offense of "delivery of a controlled substance." See Pena-Mota v. Texas, 986 S.W.2d 341, 346 (Tex. App. 1999) ("Possession with intent to deliver a controlled substance is a lesser-included offense of delivery of that same controlled substance in the same transaction."). Under Gonzales, a federal sentencing court cannot impose guidelines enhancement because of a prior Texas conviction for "delivery." Now the new majority opinion concludes that a court can enhance a sentence for "delivery's" lesser included offense, "possession with intent to deliver [by offer to sell]."[13]

Under the majority panel opinion, a defendant is now punished more severely in the federal sentencing context for the lesser Texas crime of possession with intent to deliver controlled substances than for the greater Texas crime of delivery of controlled substances if he chooses to plead, or if a Texas jury convicts, on a lesser-included offense instead of the more serious general offense. Thus, a Texas culprit who possesses drugs with intent to offer them for sale is exposed to USSG enhancement

---

[13] While Ford's conviction pertains to an enhancement under USSG § 2K2.1(a) as a "controlled substance offense" and *Gonzales* pertains to enhancements under USSG § 2L1.2 as a "drug trafficking offense," the definitions of "controlled substance offense" and "drug trafficking offense," as I noted earlier, are identical. *Compare* USSG §§ 4B1.2(b), 2K2.1 cmt. n. 1 (defining "controlled substance offense") *with* USSG § 2L1.2 cmt. n. 1(B)(iv) (defining "drug trafficking offense."). As a result, our decisions discussing one enhancement would be applied to the other.

while a Texas criminal who is guilty of the greater and more serious crime of delivery of drugs is not. See Stockton v. Texas, 756 S.W.2d 873, 876 (Tex. App. 1998) ("The word 'lesser' appears to refer not to the punishment range, but to the factor that distinguishes the included offense from the offense charged, i.e., less than all facts, less serious injury or risk of harm, less culpable mental state."). Further, the new panel majority opinion conflicts, rather than conforms, with the purpose of the USSG. Such a result arguably contravenes the purpose of the Sentencing Guidelines. "'The Guidelines were enacted to bring uniformity and predictability to sentencing.' The goal is 'to reduce unjustified disparities and so reach toward the evenhandedness and neutrality that are the distinguishing marks of any principled system of justice.'" United States v. Gonzalez-Ramirez, 477 F.3d 310, 313 & nn.15-16 (5th Cir. 2007) (citing United States v. Asburn, 20 F.3d 1336, 1347 (5th Cir. 1994); Koon v. United States, 518 U.S. 81, 113 (2000)).

IV. The Majority Mischaracterizes Ford's conviction

The majority reaches its conclusion relying on three flawed justifications. The majority unsuccessfully attempts to justify its inference of an intent to distribute from Ford's guilty plea conviction in three different ways: (1) by mis-characterizing Ford's conviction; (2) by inferring an "intent to distribute" from simple possession; and (3) by comparing Ford's conviction with United States v. Palacios-Quironez, 431 F.3d 471 (5th Cir. 2005). Each proffered justification is fundamentally flawed.

First, the majority attempts to (mis)characterize Ford's "intent to deliver" as an "intent to distribute." The majority concludes quite summarily that "Ford possessed drugs with intent to deliver or pass them on to another." (emphasis added). The majority obviously believes and desires to characterize Ford as intending to "pass" drugs onto another, which is "distribution" for federal sentencing purposes. However, no document informs this panel that Ford was convicted for intending to "pass" controlled substances. He was only convicted for an "intent to deliver controlled substances," which includes an intent to "offer to sell controlled substances." Gonzales clearly forbids us today to characterize the term "delivery" in this Texas statute as necessarily including the "passing" of controlled substances to another, i.e., actually or constructively transferring controlled substances to another. 484 F.3d at 715 ("That is, even though the indictment charged [the defendant] with actually transferring, constructively transferring, and offering to sell a controlled substance, the jury could have convicted him based on an offer to sell alone."). Gonzales logically requires us today to consider Ford's conviction as possession with intent to offer to sell and not, as the majority desires, a conviction that implicates an intent to actually or constructively transfer controlled substances.

In essence, the majority opinion is asking us to disregard precedent concluding that "a disjunctive statute may be pleaded conjunctively and proven disjunctively." Gonzales, 484 F.3d at 715 (quoting United States v. Still, 102 F.3d 118, 124 (5th Cir. 1996)). The majority now re-characterizes Ford's guilty plea as necessarily convicting him of

19

possession with intent to transfer, rather than with intent to offer to sell, although the latter is the only intent or offense imputable to him under the Taylor categorical approach. Thus, the majority disregards Gonzales and an established line of precedent under which we are required to assume that the conviction was necessarily established under only the least culpable of the disjunctive possibilities, i.e., possession with intent to offer to sell.

## V. Inferring Distribution from Possession Disregards the Taylor Categorical Approach

The majority attempts to distinguish Gonzales by noting that the conviction in this case involved possession in addition to an intent to deliver.  In other words, the majority infers from the "possession" element in the offense that an "intent to deliver" is equivalent to an "intent to distribute" for federal sentencing purposes.  A majority of Circuit courts explicitly forbids any inference from possession or other aspects of the defendant's underlying conduct with respect to the "intent to distribute" element.[14]   See Herrera-Roldan, 414 F.3d at 1241 ("We therefore decline the government's invitation to draw inferences about an intent to distribute from [the defendant's] underlying conduct."); Montanez, 442 F.3d at 491 ("[C]riminal intent to distribute must be proven and not merely implied.") (quoting United States v. Foster, 28

---

[14]The Supreme Court has said that conviction for simple possession is not a "controlled substance offense." *Salinas v. United States*, 547 U.S. 188, 188 (2006) (per curiam). Therefore, there must be some basis for an inference of intent to distribute, manufacture, etc. other than and independent  of possession in order for the state conviction for possession to arise to an offense subject to federal sentence enhancement.  *See Montanez*, 442 F.3d at 491 (6th Cir. 2006).

F.3d 109, 1994 WL 201201 (9th Cir. May 23, 1994) (unpublished)); United States v. Villa-Lara, 451 F.3d 963, 965 (9th Cir. 2006) ("The Information states that [defendant] was charged with possession of a "trafficking quantity" of a controlled substance. This does not reveal that he had any trafficking intent."). One Circuit court allows such an inference only if the statutory scheme clearly mandates such an inference. See United States v. Madera-Madrea, 333 F.3d 1228, 1232 (11th Cir. 2003). As I note below, other Circuits persuasively criticize even this limited inference of an "intent to distribute" from mere possession as violating Taylor. Therefore, Madera-Madera appears to have been incorrectly decided, and furthermore, is readily distinguishable, because it relies on explicit statutory intent, which does not exist here.

In Madera-Madera, 333 F.3d at 1232, based on a close reading of a Georgia statute, the Eleventh Circuit determined that Georgia's legislature intended a conviction for the possession of a certain elevated amount of drugs to be an offense so serious that federal sentencing courts should infer that the statute intends such possession to "represent an intent to distribute and thereby traffic." In Villa-Lara, the Ninth Circuit rejected the Eleventh Circuit's approach, because it failed to "undertake a proper Taylor categorical analysis of only the statutory definition of the prior offense." Id. at 965 n.2. Moreover, the Tenth Circuit in United States v. Herrera-Roldan, 414 F.3d 1238, 1241-243 (10th Cir. 2005) addressed the same Texas statute at issue in this case and concluded that the approach in Madera-Madera does not apply to this Texas statute, because of material differences between Georgia's and Texas'

statutory schemes.  Id. ("The Texas statutory scheme therefore does not imply an intent to distribute from the fact of possession. . .").  Madera-Madera is either incorrectly decided or readily distinguishable as it relies on a specific reading of legislative intent of a unique Georgia statute. Therefore, there is no justification or case that permits the majority to avoid the elements approach under Taylor and create an unwarranted inference of an "intent to distribute" from the "possession" element if the Texas offense's "intent to deliver" element, by itself, is broader than the federal definition of an "intent to distribute."  Cf. Gonzales, 484 F.3d at 715-17; Villa-Lara, 451 F.3d at 965; Montanez, 442 F.3d at 492.

## VI. Palacios-Quironez is irrelevant

The majority's heavy reliance on United States v. Palacios-Quironez, 431 F.3d 471 (5th Cir. 2005) as an analogous precedent is misplaced. In that case we concluded that a California conviction for a "purchase for sale" of controlled substances is a "drug trafficking offense" for federal sentencing purposes.  In Palacios, the statutory terms and the issues on appeal were markedly dissimilar.

First, Palacios was convicted of a "purchase for sale" of controlled substances under a California statute. Ford was convicted for "possession with an intent to deliver" under a Texas statute.  The elements "purchase" and "intent to sell"[15] in Palacios' statutory offense are entirely unlike Ford's statutory offense elements of "possession" and "intent to

---

[15]An intent to "offer to sell" is not equivalent to an intent to actually sell controlled substances.  *See Flores-Meras,* 234 F. App'x 307.  *Palacios* was a case about an intent to actually sell controlled substances, and thus is also distinguishable from this case in this regard.

22

deliver."  The majority provides no reason why dissimilar elements in these statutory offenses are comparable under a Taylor approach.

Second, the only issue on appeal in Palacios was whether the "purchase" element in the California offense is broader than the "possession" element in the "possession with intent to distribute" offense in the federal sentencing guideline. Palacios, 431 F.3d at 474 ("[We] do not agree [with Palacios] that 'purchase for purposes of sale does not involve 'possession' with intent to distribute as required by the guidelines.").  Palacios held that the "purchase" element under the California statutory offense is not broader, but narrower, than the "possession" element.  Id. at 474, 476 n.6 ("By contrast, to accomplish a purchase of a drug for sale, one must have at least constructive possession.").  Palacios' holding regarding the relationship between the "purchase" element in a California statutory offense and "possession" element in the federal sentencing guidelines is completely irrelevant to the issue before us now.

The majority's decision finds no basis in law, ignores the fact that our original panel opinion was a logical consequence of Gonzales[16] under the Taylor categorical approach, and creates irrational disparities in sentencing.  For these reasons, I respectfully dissent.

---

[16] To the extent that a new majority opinion is in conflict with *Gonzales* the earlier precedent still controls future cases.  *See Billot v. Puckett,* 135 F.3d 311, 316 (5th Cir. 1998).