REVISED JANUARY 30, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 3, 2008

Charles R. Fulbruge III
Clerk

No. 06-41637

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JUAN ANTONIO LOPEZ-SALAS

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:

Defendant-appellant Juan Antonio Lopez-Salas appeals his sentence. He argues that it was improperly enhanced pursuant to section 2L1.2(b)(1)(A)(i) of the United States Sentencing Guidelines because his prior North Carolina conviction for transporting marijuana does not constitute a drug trafficking offense. We VACATE his sentence and REMAND for re-sentencing.

I. BACKGROUND

On May 9, 2006, Lopez-Salas, an alien and citizen of Mexico, was arrested for being unlawfully present in the United States. Lopez-Salas was previously deported on December 26, 1996, after being convicted in North Carolina state

court and sentenced to seven years of imprisonment for conspiring to transport marijuana under section 90-95(h) of the General Statutes of North Carolina. On May 30, 2006, Lopez-Salas was charged with being found unlawfully present in the United States after deportation and conviction of an aggravated felony in violation of 8 U.S.C. §§ 1326(a) and 1326(b). He pleaded guilty on October 3, 2006, without the benefit of a plea agreement.

A pre-sentencing investigation report was prepared by the United States Probation Office, which recommended a sixteen-level enhancement on the grounds that Lopez-Salas's prior North Carolina conviction was a drug trafficking offense under section 2L1.2(b)(1)(A)(i) of the United States Sentencing Guidelines (the "Guidelines"). Lopez-Salas objected to the enhancement, arguing that the underlying North Carolina statue did not create a drug trafficking offense because it punished mere possession without proof of an intent to distribute. On November 8, 2006, the district court overruled Lopez-Salas's objection because the North Carolina indictment charged him with conspiring "to commit the felony of trafficking by transporting 100 pounds or more but less than 2000 pounds of marijuana." According to the court, sustaining the objection would have required it to "ignore what . . . commonly happens in our courts day in and day out," that is, courts consider the "quantity of a controlled substance as evidence sufficient to support a finding that the person did so with the intent to distribute . . . ." The district court, therefore, sentenced Lopez-Salas to forty-one months of imprisonment.

On November 9, 2006, Lopez-Salas filed this timely appeal.[1]

---

[1] Lopez-Salas challenges the constitutionality of treating 8 U.S.C. § 1326(b) as a sentencing factor, as opposed to an independent element of the crime that must be proven. This argument was rejected in Almendarez-Torres v. United States, 523 U.S. 224 (1998). He

## II. DISCUSSION

A. Drug Trafficking Enhancements

Under the Guidelines, the offense level for unlawfully entering the United States is increased by sixteen levels if the defendant was previously deported after being convicted of a drug trafficking offense that resulted in a sentence of thirteen or more months of imprisonment. U.S.S.G. § 2L1.2(b)(1)(A)(i). A "drug trafficking offense" is defined as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2, cmt. n.1(B)(iv) (emphasis added). We review a district court's conclusion that a prior state conviction constitutes a drug trafficking offense de novo. United States v. Gutierrez-Ramirez, 405 F.3d 352, 355-56 (5th Cir. 2005).

To determine whether a prior conviction is a predicate offense under the Guidelines, we generally apply the "categorical approach" set forth in Shepard v. United States, 544 U.S. 13 (2005), and Taylor v. United States, 495 U.S. 575 (1990). See United States v. Garza-Lopez, 410 F.3d 268, 273-74 (5th Cir. 2005); Gutierrez-Ramirez, 405 F.3d at 356-57. We look to the statutory definition of the underlying crime, rather than the facts supporting the conviction, and ask whether that offense necessarily fits within the definition of the enhancement. See Garza-Lopez, 410 F.3d at 273. "In a 'narrow range of cases,' however, . . . [we] may look beyond the elements of the offense when making such a

_____

contends that the Supreme Court would overrule Almendarez-Torres in light of Apprendi v. New Jersey, 530 U.S. 466 (2000), but properly concedes that we have rejected this argument and only appeals the issue to preserve it for further review.

determination." Id. (citation omitted). The determination of whether a prior offense constitutes a drug trafficking offense under § 2L1.2(b)(1)(A)(i) falls into that narrow range. Id. (citing United States v. Rodriguez-Duberney, 326 F.3d 613, 616-17 (5th Cir. 2003)). We are not, therefore, free to consider any and all facts, but we "may consider the statutory definition of the predicate offense, the charging paper, and the jury instructions." Id. (citations omitted); Gutierrez-Ramirez, 405 F.3d at 356-57 (stating that courts do not have carte blanche authority to look beyond the indictment and jury instructions to determine whether a prior conviction qualifies for a sentencing enhancement).

In the instant case, Lopez-Salas's sentence cannot be upheld based on the statutory elements of his crime. The underlying North Carolina statute punishes anyone who "sells, manufacturers, delivers, transports, or possesses [a certain quantity] of marijuana . . . ." N.C. GEN. STAT. § 90-95(h)(1) (1993). But we have previously held that a drug trafficking enhancement could not be supported by a conviction for transporting a controlled substance unless the predicate statute included as an element an intent to manufacture, import, export, distribute, or dispense. Garza-Lopez, 410 F.3d at 274-75. Nor is there any extrinsic evidence that provides the requisite element of intent. The district court relied on the indictment, which charged Lopez-Salas with conspiring "to commit the felony of trafficking by transporting 100 pounds or more but less than 2000 pounds of marijuana." Yet the indictment merely tracks the statutory language. A charging document that is no more specific than the statute of conviction adds nothing to our analysis. Gutierrez-Ramirez, 405 F.3d at 359 (holding that the indictment did not justify the enhancement because it merely recited the language of the overly broad statute).

Nevertheless, the Government argues that Lopez-Salas's conviction constitutes a drug trafficking offense because North Carolina presumes that anyone convicted for transporting marijuana under N.C. GEN. STAT. § 90-95(h) intends to distribute the drugs to others. The Government asserts that the presumption can be inferred because the North Carolina statute requires the transportation of large quantities of marijuana. In further support, the Government directs us to North Carolina case law stating that "[i]n creating this offense, [North Carolina's] legislature determined that certain amounts of controlled substances indicate an intent to distribute on a large scale." State v. McCoy, 414 S.E.2d 392, 394 (N.C. Ct. App. 1992) (citation omitted); see also State v. Carmon, 576 S.E.2d 730, 736 (N.C. Ct. App. 2003) (citation omitted) (stating that a § 90-95 trafficking crime involves the large scale distribution of controlled substances). In response, Lopez-Salas relies on unpublished cases from this court holding that a conviction under N.C. GEN. STAT. § 90-95(h) does not constitute a drug trafficking offense. See, e.g., United States v. Sanchez-Lopez, 182 F. App'x 355 (5th Cir. May 30, 2006); United States v. Meabe-Morales, 165 F. App'x 347 (5th Cir. Feb. 1, 2006). None of those cases addresses whether a state's presumption of intent can create a drug trafficking offense under the Guidelines, however, which is both an issue of first impression in this court and the subject of a circuit split.

B. The Circuit Split

In United States v. Madera-Madera, 333 F.3d 1228, 1231-34 (11th Cir. 2003), the Eleventh Circuit held that a Georgia conviction for drug trafficking constituted a drug trafficking offense because the statute presumes an intent to distribute based on the amount of drugs involved. The court determined that a

presumption exists by looking to the overall statutory scheme, which requires proof of intent to distribute for possession of a small quantity of a controlled substance but not for possession of a large quantity of controlled substance. Id. at 1231-32. It deduced from this dichotomy that Georgia deems possession of a large amount of drugs per se evidence of an intent to distribute. Id.

The Eleventh Circuit next concluded that a state statute that presumes an intent to distribute creates a drug trafficking offense, as defined in § 2L1.2(b)(1)(A), for three reasons. Id. at 1233-34. "First, the Sentencing Commission clearly understands how to define an enhancement in terms of the elements of the prior offense, but did not do so in § 2L1.2(b)(1)(A)(i)." Id. at 1233. In particular, while the definitions of other enhancements include the phrase "that has an element," § 2L1.2(b)(1)(A)(i) does not. Id. (citation omitted). Second, if courts do not look beyond the elements of the Georgia statute, the Guidelines would produce anomalous results. Id. at 1233-34. They would permit enhancements for trafficking in small amounts of drugs while prohibiting enhancements for trafficking in large amounts of drugs. Id. Third, these anomalies would thwart the intent of the Guidelines, which were revised by the Sentencing Commission in order to provide graduated sentencing enhancements based on the seriousness of prior convictions. Id. at 1234 (citations omitted).

On the other hand, one circuit court expressly rejects Madera-Madera, and two other circuits reject the decision's rationales. In United States v. Villa-Lara, 451 F.3d 963, 965 (9th Cir. 2006), the Ninth Circuit held that a Nevada conviction for possession of a controlled substance is not a drug trafficking offense under § 2L1.2(b)(1)(A) because the underlying state statute does not include as an element the intent to manufacture, import, export, distribute, or

dispense.  The Ninth Circuit reasoned that the ordinary categorical approach applies when determining whether a prior conviction is a drug trafficking offense and, therefore, refused to look beyond the elements of the statute.  Id. at 964-65 (citation omitted).  It rejected Madera-Madera because the Eleventh Circuit "failed to cite Taylor or [otherwise] undertake a proper Taylor categorical analysis of only the statutory definition of the prior offense."  Id. at 965 n.2.

Similarly, in United States v. Montanez, 442 F.3d 485, 493-94 (6th Cir. 2006), the Sixth Circuit refused to find a "controlled substance offense," under U.S.S.G. § 4B.1.2(b), based on an Ohio conviction for possession of a large quantity of drugs.[2]  The Sixth Circuit accepted the Government's contention that the Ohio law is targeted at drug dealers, and that Ohio presumes that anyone possessing large quantities of drugs intends to distribute them.  Regardless, the court held that while a "bulk theory" of intent may suit a state's purposes, it does not comport with the requirements of the Guidelines.  Id. at 491 (citation omitted).  When determining whether a prior offense satisfies the Guidelines, the "'implications from the statutory structure[]' can[not] trump the clear and explicit elements of the offense."  Id. at 493 (citation omitted).

Finally, in an opinion written by Judge McConnell that we find particularly persuasive, the Tenth Circuit rejected the reasoning of Madera-Madera.  See United States v. Herrera-Roldan, 414 F.3d 1238, 1240-43 (10th Cir. 2005).  In Herrera-Roldan, the Tenth Circuit refused to look beyond the elements of the Texas statute to determine whether a prior conviction was a drug

---

[2] Other than the requisite prison term, the definition of a controlled substance offense under § 4B.1.2(b) is the same as the definition of a drug trafficking offense under § 2L1.2(b)(1)(A)(i).

trafficking offense under § 2L1.2(b)(1)(A). Id. at 1240-41. While it distinguished the Texas statute from the Georgia statute reviewed by the Eleventh Circuit, id. at 1242, the Tenth Circuit stated that the definition of a drug trafficking offense "confines [its] inquiry to the terms of the statute of conviction just as much as the phrase . . . 'that has as an element[,]'" id. at 1241. Moreover, the court noted that although its interpretation might produce anomalous results, incongruous outcomes were "not strong enough to alter [its] straightforward reading of the Guidelines." Id. at 1244.

We agree with the reasoning of the Sixth, Ninth, and Tenth Circuits and hold that Lopez-Salas's North Carolina conviction does not constitute a drug trafficking offense. Sentencing enhancements are defined by federal, not state, law. See Taylor, 495 U.S. at 590-91 (condemning the unfair results that would occur if each state could create its own standard). While a bulk theory of intent may suit a state's purposes, "'it does not comport with the requirement that, for purposes of federal sentencing law, criminal intent to distribute must be proven and not merely implied.'" Montanez, 442 F.3d at 492 (citation omitted). The Guidelines could have defined a drug trafficking offense based on the quantity of drugs possessed. Instead, they require that a state prove an intent to manufacture, import, export, distribute, or dispense. See § 2L1.2, cmt. n.1(B)(iv).

While we are sympathetic with the Eleventh Circuit's concerns, we agree with Judge McConnell's cogent reasoning to the contrary. First, the absence of the phrase "that has an element" from the definition of a drug trafficking offense is not significant enough to depart from the ordinary standard of review. See Herrera-Roldan, 414 F.3d at 1241-42. This conclusion is buttressed by comparison to Taylor, where the Supreme Court limited the scope of review of

prior offenses under the Career Criminals Amendment Act of 1986 (the "Act") to the terms of the statute because the Act "refers to 'a person who . . . has three previous convictions' for—not a person who has committed—three previous violent felonies or drug offenses." 495 U.S. at 600 (omissions in the original). Similarly, here, the sentencing enhancement applies to an illegal alien deported after "a conviction for a felony that is [] a drug trafficking offense[,]" § 2L1.2(b)(1)(A)(i), not to an illegal alien who has committed a drug trafficking offense. Second, incongruous results do not justify a departure from the ordinary standard of review. See Herrera-Roldan, 414 F.3d at 1244. Anomalies occur when the evidence a court reviews is intentionally limited. But the Guidelines cannot be "rewrit[ten] . . . simply because they might . . . produce an anomalous result." Id.

We add that our conclusion in this case does not preclude the district court from considering Lopez-Salas's prior North Carolina conviction for sentencing purposes on remand. "Before United States v. Booker, [543 U.S. 220, 259 (2005),] sentencing courts were compelled to impose sentences that fell within the sentencing ranges assigned by the Guidelines, unless a specified exception existed. . . . Since Booker, sentencing courts have had a third sentencing option—a non-Guidelines sentence." United States v. Mejia-Huerta, 480 F.3d 713, 721 (5th Cir. 2007).

Prior to imposing a non-Guidelines sentence, "the sentencing court must calculate the correct Guidelines range, consider it as advisory, and use it as a frame of reference." Id.; see also Gall v. United States, 128 S. Ct. 586, 596 (2007) (noting that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"). If the sentencing court "decides

9

that an outside-Guidelines sentence is warranted, [the court] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 128 S. Ct. at 597. "After settling on the appropriate sentence, [the sentencing court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Id.; see also United States v. Smith, 440 F.3d 704, 707 (5th Cir. 2006) (holding that district courts must provide fact-specific reasons for imposing a non-Guidelines sentence and those reasons must be consistent with the sentencing factors enumerated in 18 U.S.C. § 3553(a)).

We have previously held that "[a] defendant's criminal history is one of the factors that a court may consider in imposing a non-Guideline[s] sentence." Smith, 440 F.3d at 709. Indeed, in United States v. Tzep-Mejia, 461 F.3d 522, 526-28 (5th Cir. 2006), we upheld an upward variance in a non-Guidelines sentence for a past conviction without regard to whether the prior offense "technically" qualified as a crime of violence under § 2L1.2(b)(1)(A)(ii).

## III. CONCLUSION

For the reasons stated above, we VACATE Lopez-Salas's sentence and REMAND for re-sentencing consistent with this opinion.